1  GOLD BENNETT CERA & SIDENER LLP
   STEVEN O. SIDENER (State Bar No. 121062)
2  JOSEPH M. BARTON (State Bar No. 188441)
   595 Market Street, Suite 2300
3  San Francisco, California 94105-2835
   Telephone: (415) 777-2230
4  Facsimile: (415) 777-5189

5  COHEN MILSTEIN HAUSFELD & TOLL, P.L.L.C.
   MICHAEL D. HAUSFELD
6  1100 New York Avenue, N.W.
   West Tower, Suite 500
7  Washington, D.C. 20005
   Telephone: (202) 408-4600
8  Facsimile (202) 408-4699

9       - and -

10 LINDA P. NUSSBAUM
   150 East 52nd Street, 30th Floor
11 New York, New York 10022
   Telephone: (212) 838-7797
12 Facsimile: (212) 838-7745

13 Co-Chairmen of Plaintiffs' Executive Committee

14

15              UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 17 IN RE RUBBER CHEMICALS ANTITRUST LITIGATION | MDL Docket No. C-04-1648 MJJ |
| 18 | Class Action |
| 19 | **SECOND AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL ANTITRUST LAWS** |
| 20 THIS DOCUMENT RELATES TO: | |
| 21 | **JURY TRIAL DEMANDED** |
| 22 C-03-01496 MJJ C-03-01516 MJJ | |
| 23 C-03-02477 MJJ C-03-02805 MJJ | |
| 24 C-03-03147 MJJ C-03-03418 MJJ | |
| 25 C-04-00197 MJJ | |

26

27

28

#108833

Class Plaintiffs ("Plaintiffs"), individually and on behalf of a class of all those similarly situated, bring this action ("Complaint") for treble damages and injunctive relief under the antitrust laws of the United States.  Plaintiffs allege as follows:

## NATURE OF THE CASE

1.      Plaintiffs allege a conspiracy to fix, raise, maintain and/or stabilize prices for rubber chemicals sold in the United States and/or to allocate markets and customers for the sale of rubber chemicals in the United States.

2.      This action is brought on behalf of all individuals and entities which purchased rubber chemicals in the United States directly from defendants, their predecessors or their controlled subsidiaries from at least as early as May 1, 1995 through December 31, 2001 (the "Class").   At all relevant times herein, defendants and their co-conspirators were involved in the manufacture, distribution, and/or sale of rubber chemicals.  During the period May 1, 1995 through December 31, 2001 ("class period"), defendants and their co-conspirators agreed, combined, and conspired with each other to fix, raise, maintain and/or stabilize the price of rubber chemicals and /or to allocate markets and/or customers in the United States.  Because of defendants' unlawful conduct, Plaintiffs paid higher prices for rubber chemicals than they would have paid absent the conspiracy and, as a result, have been damaged.

## JURISDICTION AND VENUE

3.      This action is instituted under Sections 4 and 16 of the Clayton Act,15 U.S.C. §§ 15 and 26, to obtain injunctive relief and to recover treble damages and the costs of this suit, including reasonable attorneys' fees, against defendants for damages sustained by Plaintiffs for violations of Section 1 of the Sherman Act, 15 U.S.C. §1.

4.      Jurisdiction is conferred upon this Court by 28 U.S. C. §§1331, 1337 and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15(a) and 26.

5.      Venue is laid in this district pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§15, 22 and 26 and 28 U.S.C. §1391(b), (c) and (d).  Venue is proper in this judicial district because during the relevant period one or more of the defendants resided, transacted business, was found, or had agents in this district.

SECOND AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FED. ANTITRUST LAWS-
MDL Docket No. C-04-1648 (MJJ)                                                                                    -1-

1

## DEFINITIONS

2    6.    As used herein, the term:

3        (a)    "Rubber chemicals" refers to chemicals used to create synthetic rubber and

4 to modify natural rubber, including, but not limited to, the following categories and subcategories:

5 accelerators  (accelerators, secondary accelerators, retardants, activators and vulcanizing agents),

6 antidegradants (antioxidants, antiozonants and waxes) and certain other miscellaneous rubber

7 chemicals, including blowing agents, retardants, polermerization regulators, shortstops, peptizing

8 agents and vulcanizing agents; and

9        (b)    "Person" means any individual, partnership, corporation, association or

10 other business or legal entity.

11

## PLAINTIFFS

12    7.    Plaintiff Rubber Engineering and Development Company, Inc. ("REDCO") was at

13 all relevant times a Nevada corporation with its principal place of business located in Carson City,

14 Nevada.  During the relevant time period, REDCO purchased rubber chemicals in the United

15 States directly from one or more of the defendants.

16    8.    Plaintiff Standard Rubber Products, Inc. ("Standard Rubber") was at all relevant

17 times a Massachusetts corporation with its principal place of business located in Hanover,

18 Massachusetts.  During the relevant time period, Standard Rubber purchased rubber chemicals in

19 the United States directly from one or more of the defendants.

20    9.    Plaintiff Polymerics, Inc. ("Polymerics") was at all relevant times an Ohio

21 corporation with its principal place of business located in Cuyahoga Falls, Ohio.  During the

22 relevant time period, Polymerics purchased rubber chemicals in the United States directly from

23 one or more of the defendants.

24    10.    Plaintiff Schlegel Corporation ("Schlegel") was at all relevant times a New York

25 corporation with its principal place of business located in Rochester, New York.  During the

26 relevant time period, Schlegel purchased rubber chemicals in the United States directly from one

27 or more of the defendants.

28 //

11.     Plaintiff Precision Associates, Inc. ("Precision") was at all relevant times a Minnesota corporation with its principal place of business located in Minneapolis, Minnesota. During the relevant time period, Precision purchased rubber chemicals in the United States directly from one or more of the defendants.

12.     Plaintiff Monmouth Rubber & Plastics Corp. ("Monmouth") was at all relevant times a New Jersey corporation with its principal place of business located in Long Branch, New Jersey.  During the relevant time period, Monmouth purchased rubber chemicals in the United States directly from one or more of the defendants.

## DEFENDANTS

### Akzo Defendants

13.     Defendant Akzo Nobel Chemicals International B.V. ("Akzo B.V.") is wholly owned, indirectly or directly, by Akzo Nobel N.V., a corporation with its principal place of business in the Netherlands.  Akzo B.V. manufactured, marketed and/or sold rubber chemicals in the United States during the Class Period through its predecessors, affiliates, subsidiaries and/or joint ventures, including defendants Flexsys N.V. and Flexsys America L.P., a 50/50 joint venture formed in 1995 and owned by Akzo B.V. and Solutia, Inc.  At all relevant times, Akzo B.V. dominated and controlled the rubber chemicals business of defendants Flexsys N.V. and Flexsys America L.P.

14.     [Intentionally omitted]

15.     Defendant Akzo Nobel Chemicals, Inc. ("Akzo") is wholly owned, directly or indirectly, by Akzo Nobel Inc., a corporation with its principal place of business in Chicago, IL. Akzo Nobel Inc. is a wholly owned subsidiary of Akzo Nobel N.V.  Akzo manufactured, marketed and/or sold rubber chemicals in the United States during the Class Period through its predecessors, affiliates, parents, subsidiaries and/or joint ventures, including defendants Flexsys N.V. and Flexsys America L.P., a 50/50 joint venture formed in 1995 and owned by its parent Akzo B.V. and Solutia, Inc.

16.     Defendant Flexsys N.V. is a 50/50 joint venture formed in 1995 by Akzo B.V. and Monsanto Company.  Since 1997, Flexsys N.V. has been owned by Solutia, Inc. (a spinoff

of Monsanto Company's chemical business) and Akzo B.V. Defendant Flexsys N.V. has its headquarters located in Brussels, Belgium. Defendant Flexsys N.V. manufactured, marketed and/or sold rubber chemicals in the United States during the Class Period both directly and through its predecessors, affiliates and/or subsidiaries, including its subsidiary defendant Flexsys America L.P. At all relevant times, defendant Flexsys N.V. dominated and controlled the rubber chemicals business of defendant Flexsys America L.P.

17.    Defendant Flexsys America L.P. ("Flexsys America") is a Delaware corporation with its principal place of business located in Akron, Ohio. Flexsys America is the U.S. subsidiary of Flexsys N.V. and the result of a 50/50 joint venture formed in 1995 by Akzo B.V. and Monsanto Company. Flexsys America manufactured, marketed and/or sold rubber chemicals in the United States during the Class Period both directly and through its predecessors, affiliates, parents and/or subsidiaries.

**Bayer Defendants**

18.    Defendant Bayer A.G. is a corporation organized and existing under the law of the Federal Republic of Germany, with its principal place of business in Bayerwerk, Germany. Defendant Bayer A.G. manufactured, marketed and/or sold rubber chemicals in the United States during the Class Period, both directly and through its predecessors, affiliates and/or subsidiaries, including defendants Rhein Chemie Rheinau GmbH, Rhein Chemie Corporation and Bayer Corporation. At all relevant times, Bayer A.G. dominated and controlled defendants Rhein Chemie Rheinau GmbH, Rhein Chemie Corporation and Bayer Corporation. Defendant Bayer AG had approximately $286 million in sales of all types of rubber chemicals in 2001, with 33% of its total revenues from sales in the Americas.

19.    Defendant Bayer Corporation ("Bayer") is a Pennsylvania corporation and is a wholly owned subsidiary of Bayer A.G. with its principal place of business in Pittsburgh, Pennsylvania. Bayer manufactured, marketed and/or sold rubber chemicals in the United States during the Class Period, both directly and through its predecessors, affiliates, parents and/or subsidiaries.

//

20.     Defendant Rhein Chemie Rheinau GmbH ("Rhein GmbH") is a corporation organized and existing under the law of the Federal Republic of Germany, with its principal place of business in Mannheim, Germany.  Rhein GmbH is a subsidiary of Bayer AG and manufactured, marketed and/or sold rubber chemicals in the United States during the Class Period, both directly and through its predecessors, affiliates and/or subsidiaries, including U.S. subsidiary defendant Rhein Chemie Corporation.  At all relevant times, defendant Rhein GmbH dominated and controlled the rubber chemicals business of defendant Rhein Chemie Corporation.

21.     Defendant Rhein Chemie Corporation ("Rhein Chemie") is a New Jersey corporation with its principal place of business in Chardon, Ohio.  Rhein Chemie is a wholly owned U.S. subsidiary of Rhein Chemie Rheinau GmbH.  Rhein Chemie manufactured, marketed and/or sold rubber chemicals in the United States during the Class Period, both directly and through its predecessors, affiliates, parents and/or subsidiaries.  On December 14, 2001, defendant Bayer announced a cooperative agreement with Rhein Chemie where, effective January 1, 2002, Rhein Chemie became a distributor for Bayer's rubber chemicals.

**Crompton Defendants**

22.     Defendant Crompton Corporation ("Crompton") is a Delaware corporation with its principal place of business in Greenwich, Connecticut.  Crompton was formed in September 1999 by the merger of Crompton & Knowles Corp. and Witco Corp.  Crompton & Knowles Corp. expanded its rubber chemicals business when it acquired Uniroyal Chemical Company, Inc. in 1996.  Crompton's Performance Chemicals and Elastomers operations manufactured, marketed and/or sold rubber chemicals in the United States during the Class Period, both directly and through its predecessors, affiliates and/or subsidiaries, including its wholly owned subsidiary, defendant Uniroyal Chemical Company, Inc.  At all relevant times, defendant Crompton dominated and controlled the rubber chemicals business of defendant Uniroyal Chemical Company, Inc.

23.     Defendant Uniroyal Chemical Company, Inc. ("Uniroyal Chemical") is a Delaware corporation with its principal place of business in Akron, Ohio.  Uniroyal Chemical is a wholly-owned subsidiary of Crompton.  Uniroyal Chemical manufactured, marketed and/or sold rubber

1  chemicals in the United States during the Class Period, both directly and through their

2  predecessors, affiliates, parents and/or subsidiaries.

3      24.    Whenever a reference in this Complaint reference is made to any act, deed or

4  transaction of any corporation, the allegation means that the corporation engaged in the act, deed

5  or transaction by or through its officers, directors, agents, employees or representatives while they

6  were actively engaged in the management, direction, control or transaction of the corporation's

7  business or affairs.

8  **AGENTS AND CO-CONSPIRATORS**

9      25.    The acts alleged in this Complaint to have been done by each defendant were

10  authorized by their parent companies.

11      26.    Various other persons, firms and corporations, not named as defendants in this

12  Complaint, have participated as co-conspirators and performed acts and made statements in

13  furtherance of the conspiracy.

14  **CLASS ACTION ALLEGATIONS**

15      27.    Plaintiffs bring this action under Rule 23(a) and (b)(3) of the Federal Rules of Civil

16  Procedure on behalf of the following class:

17  All persons (excluding governmental entities, defendants, and the present and
former parents, predecessors, subsidiaries and affiliates of the foregoing) which

18  purchased rubber chemicals in the United States directly from any of the
defendants, or any present or former parent, subsidiary or affiliate thereof, at any

19  time during the period from May 1, 1995 through December 31, 2001.

20      28.    Plaintiffs allege that there are hundreds of Class members, the exact number and

21  their identities being unknown to Plaintiffs.

22      29.    The Class is so numerous that joinder of all members is impracticable.

23      30.    There are questions of law or fact common to the Class, including but not limited

24  to:

25      (a)    Whether defendants and their co-conspirators engaged in a combination

26  and conspiracy to fix, raise, maintain or stabilize prices of rubber chemicals sold in the United

27  States;

28      (b)    Whether defendants and their co-conspirators engaged in a combination

and conspiracy to allocate their major customers, accounts or territories; and

(c)    Whether the conduct of defendants and their co-conspirators had an impact and caused damages to all members of the Class.

31.    Plaintiffs' claims are typical of the claims of all Class members, and Plaintiffs will fairly and adequately protect the interests of the members of the Class. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

32.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants.

33.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

34.    The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

35.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable and is one for which records of the names and addresses of the Class should exist in the files of defendants. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This class action presents no difficulties of management that would preclude its maintenance as a class action.

## INTERSTATE TRADE AND COMMERCE

36.    The activities of defendants and their co-conspirators were within the flow of, and substantially affected, interstate commerce.

37.     During the time period covered by this Complaint, defendants and their co-conspirators sold and distributed rubber chemicals throughout the United States.

38.     Defendants and their co-conspirators , and each of them, have used instrumentalities of interstate commerce to manufacture, sell, distribute and market rubber chemicals.

39.     Defendants and their co-conspirators manufactured, sold and shipped substantial quantities of rubber chemicals in a continuous and uninterrupted flow of interstate commerce to customers located in states other than the states in which defendants produced rubber chemicals.

### THE RUBBER CHEMICALS MARKET

40.     Natural rubber is a naturally occurring elastomeric polymer of isoprene.  In its crude state, natural rubber has little commercial application.  Therefore, natural rubber requires compounding with various rubber chemicals to achieve the physical properties with which its value is associated.

41.     Rubber chemicals are used to process rubber into marketable substances.  Rubber chemicals are involved in the "cooking" of one or more polymers, known as vulcanizing.  Rubber chemicals are used to aid in the process of vulcanizing and to add a quality to the rubber itself (*e.g.*, resilience and tensile strength, high abrasion and tear resistance, good electrical insulation properties, and very low permeability to gas and water).

42.     Chemicals that are used to process rubber are generally classified in three categories: accelerators, antidegradants and miscellaneous chemicals.

43.     Accelerators are chemicals that accelerate the process of vulcanization.  They are used in production for curing natural and synthetic rubber and also give many physical properties to rubber.  This segment includes accelerators, secondary accelerators, retardants, activators and vulcanizing agents.  In 1999, manufacturers' sales in the accelerator segment of the market totaled approximately $352 million and accounted for approximately 51,600 metric tons of product. Accelerator chemical families include sulfenamide, other thiazoles, dithiocarbamates, thiurams, xanthtes and sulfides, aldehyde amines and guanidines.  Accelerators represent approximately 39% of the world market of all rubber chemicals.

44.     Antidegradants are chemicals used in production that add physical qualities to rubber and will protect rubber against deterioration from wear, atmospheric elements (ultraviolet, oxygen, cold) and chemical change over time. Antioxidants, antiozonants and waxes are subcategories of antidegradants. Antioxidants add qualities to rubber such as flexibility. In 1999, manufacturers' sales in the antidegradant segment of the rubber chemicals market totaled approximately $438 million and represented approximately 82,500 metric tons of product. Antidegradants represent approximately 48% of the world market of all rubber chemicals.

45.     Miscellaneous rubber chemicals comprise several categories, including blowing agents, retardants, polermerization regulators, shortstops, peptizing agents (disulfides and hydrocarbon mixtures) and vulcanizing agents (metal/organic oxides). Miscellaneous rubber chemicals represent approximately 13% of the world market of all rubber chemicals.

46.     Rubber chemicals have uses and applications in many different industries. While tire manufacturers are the largest consumers of rubber chemicals, rubber chemicals are also used extensively to manufacture outdoor furniture, hoses, seals and belting (automotive and industrial machines and equipment), weatherseal, sponge, pipe, insulation, rolls, wire insulation and jacketing, shoe soles, pharmaceutical stoppers, sporting goods (*i.e.*, golf balls), healthcare products and numerous other molded, extruded and calendered rubber goods.

47.     Manufacturers' sales of rubber chemicals in the U.S. from 1994 to 2001 were as follows:

| YEAR | SALES (Millions of dollars) |
|------|------------------------------|
| 1994 | $679.2 |
| 1995 | $738.0 |
| 1996 | $802.0 |
| 1997 | $836.2 |
| 1998 | $871.8 |
| 1999 | $909.0 |
| 2000 | $920.1 |
| 2001 | $931.4 |

48.    The rubber chemicals produced by defendants are highly fungible and interchangeable and ultimately are used for many of the same purposes and are marketed and sold through the same channels of distribution.  Moreover, while some rubber chemicals are sold under brand names, the brand names are developed for marketing purposes and have little, if any, value to customers.  Rubber chemicals are commodity products, and are therefore highly fungible and interchangeable.  Rubber chemicals are highly price-sensitive.

49.    The U.S. rubber chemicals market is highly concentrated with just a handful of producers manufacturing all the domestic rubber chemicals.  The rubber chemicals is dominated by three main players– the Akzo Defendants, the Bayer Defendants, and the Crompton Defendants.  The Akzo Defendants control about 30% of the U.S. rubber chemical market.  The Bayer Defendants and the Crompton Defendants each control about 25% of the U.S. rubber chemicals market.  Collectively, these defendants control about 80% of the U.S. rubber chemicals market.

50.    During the relevant period, rubber chemicals prices in the U.S. market behaved much differently than in the other major rubber chemicals markets in Europe and Japan.  Between 1996 and 1999, in Europe and Japan the overall prices of rubber chemicals decreased by 20.3% and 5.5%, respectively, while U.S. rubber chemicals prices increased by 8.1%.

## THE RUBBER CHEMICALS CARTEL INVESTIGATION

51.    On September 26, 2002, European Commission antitrust regulators carried out unannounced inspections on a number of rubber chemical producers, including Bayer AG and Flexsys NV, in several European cities in connection with an investigation into the alleged cartel agreement and related illegal practices concerning price-fixing of rubber chemicals.

52.    On or about October 10, 2002, Crompton, Bayer AG and Flexsys NV announced that they were being investigated by the United States Department of Justice ("DOJ") and European Union authorities for price fixing and other collusive dealings in the U.S. and European rubber chemicals industry.

53.    The DOJ investigation is based in San Francisco, California.  In connection with the investigation, grand jury subpoenas have been issued.

54.    On March 20, 2003, Crompton filed its annual report with the United States Securities and Exchange Commission ("SEC") on Form 10-K.  The Form 10-K stated that, among other things:

   a.    The Company and certain of its subsidiaries, together with other domestic and foreign companies, are currently the subject of coordinated criminal investigations being conducted by the United States Department of Justice (the "DOJ") and the Canadian Competition Bureau (the "CCB") and a coordinated civil investigation being conducted by the European Commission (together with the DOJ and the CCB, the "Governmental Authorities") with respect to possible antitrust violations relating to the sale and marketing of certain rubber processing chemicals;

   b.    The investigations by the Governmental Authorities are focused on rubber processing chemicals, including accelerators, antioxidants and antiozonants;

   c.    The Company is actively cooperating with the Governmental Authorities regarding such investigations;

   d.    The Company has been conducting its own internal investigation with the assistance of special counsel and a senior officer of the Company has been placed on paid administrative leave;

   e.    The Company has held preliminary discussions with the DOJ regarding a possible plea to violations of antitrust laws with respect to rubber chemicals; and

   f.    The Company has named a compliance officer who will report to the Chief Executive Officer and the Chairman of the Audit Committee. The primary duties of the compliance officer will be to administer the Company's compliance program in accordance with policies and procedures adopted by the Board of Directors of the Company.

//

## VIOLATIONS ALLEGED

55.     Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of the Complaint.

56.     Beginning at least as early as May 1, 1995 and continuing until December 31, 2001, the exact dates being unknown to Plaintiffs, defendants and their co-conspirators engaged in a continuing agreement, understanding and conspiracy in restraint of trade to artificially raise, fix, maintain or stabilize prices for rubber chemicals sold in the United States and/or to allocate among themselves their major customers, accounts or territories for the purpose of selling rubber chemicals in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

57.     The contract, combination and conspiracy consisted of a continuing agreement, understanding and concert of action among the defendants, the substantial terms of which were to fix, raise and maintain, or stabilize prices for rubber chemicals in the United States and/or to allocate among themselves their major customers, accounts or territories for the purpose of selling rubber chemicals.

58.     In formulating and effectuating the aforesaid contract, combination or conspiracy, defendants and their co-conspirators did those things that they combined and conspired to do, including, among other things:

    a. Participating in meetings and conversations to discuss the prices of rubber chemicals sold in the United States and elsewhere;

    b. Agreeing to charge prices at certain levels and otherwise to fix, increase, maintain or stabilize prices of rubber chemicals sold in the United States and elsewhere;

    c. Agreeing to allocate among themselves their major customers, accounts or territories; and

    d. Selling rubber chemicals to various customers throughout the U.S. at rigged and non-competitive prices.

59.     The activities described above have been engaged in by defendants and their co-conspirators for the purpose of effectuating the unlawful arrangements to fix, maintain, raise

1  and/or stabilize prices of rubber chemicals.

2  **FRAUDULENT CONCEALMENT**

3      60.    Throughout the relevant period, defendants and their co-conspirators affirmatively
4  and fraudulently concealed their unlawful conduct from Plaintiffs.

5      61.    Plaintiffs did not discover, and could not have discovered through the exercise of
6  reasonable diligence, that defendants and their co-conspirators were violating the antitrust laws as
7  alleged herein until shortly before this litigation was commenced. Nor could Plaintiffs have
8  discovered the violations earlier than that time because defendants and their co-conspirators
9  conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in
10  furtherance thereof, attempted to confine information concerning the combination and conspiracy
11  to high-level officials and fraudulently concealed their activities through various other means and
12  methods designed to avoid detection.

13      62.    Only on or about October 10, 2002, when news services announced that antitrust
14  investigators were probing allegations of price-fixing in rubber chemicals was the existence of the
15  conspiracy disclosed to the public.  Plaintiffs could not have discovered the unlawful conduct at
16  an earlier date through the exercise of reasonable diligence because of defendants' and their co-
17  conspirator's active and purposeful concealment of their unlawful activities.

18      63.    Defendants and their co-conspirators engaged in an illegal price-fixing conspiracy
19  with respect to rubber chemicals, which they affirmatively concealed, in at least the following
20  respects:

21      (a)    By meeting secretly to discuss the prices of rubber chemicals sold in the
22  U.S. and elsewhere;

23      (b)    By agreeing among themselves at meetings and in communications not to
24  discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in
25  furtherance of their illegal scheme; and

26      (c)    By giving false and pretextual reasons for the pricing of rubber chemicals
27  sold by them during the class period and by describing such pricing falsely as being the result of
28  competitive factors rather than collusion.

SECOND AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FED. ANTITRUST LAWS-
MDL Docket No. C-04-1648 (MJJ)                                                                                       -13-

64. As a result of defendants' and their co-conspirators' fraudulent concealment of their conspiracy, Plaintiffs assert the tolling of any applicable statute of limitations.

## EFFECTS

65. The unlawful contract, combination or conspiracy has had the following affects, among others:

    (a) price competition in the sale of rubber chemicals has been restrained, suppressed and/or eliminated;

    (b) prices charged by defendants and their co-conspirators were maintained at artificially high and non-competitive levels; and

    (c) Plaintiffs had to pay more for rubber chemicals than they would have paid in a competitive marketplace, unfettered by defendants' and their co-conspirators' collusive and unlawful price-fixing.

66. During the Class Period, Plaintiffs and members of the Class paid more for the rubber chemicals that they purchased than they would have paid absent a conspiracy. As a result, Plaintiffs and members of the Class have been injured and damaged in their business and property in an amount to be determined according to proof.

67. As a direct and proximate result of the illegal conspiracy, Plaintiffs have been injured in that they paid more for rubber chemicals than they would have paid in the absence of the illegal conspiracy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows

    (a) That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure.

    (b) That Court adjudge and decree that the contract, combination or conspiracy, and the acts done in furtherance thereof by defendants and their co-conspirators, be adjudged to have been a violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

    (c) That judgment be entered against defendants, jointly and severally.

    (d) That judgment so entered be trebled in accordance with antitrust laws;

1           (e)    That defendants, their affiliates, successors, transferees, assignees, and the

2    officers, directors, partners, agents and employees thereof, and all other persons acting or

3    claiming to act on their behalf, be permanently enjoined and restrained from continuing or

4    maintaining the contract, combination or conspiracy alleged herein, or from engaging in any other

5    contract, combination or conspiracy having a similar purpose or effect, and from adopting or

6    following any practice, plan, program or device having a similar purpose or effect;

7           (f)    That the Court award Plaintiffs attorneys' fees and costs, and pre-judgment

8    and post-judgment interest as permitted by law;

9           (g)    That the Court award Plaintiffs such other, further and different relief as

10   the case may require and the Court may deem just and proper under the circumstances.

11   **DEMAND FOR JURY TRIAL**

12       Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury of all of the claims

13   asserted in this Complaint so triable.

14   Dated: ___MARCH 18___, 2005        GOLD BENNETT CERA & SIDENER LLP

15

16                                  By:_____

17                                        Steven O. Sidener

18                                 COHEN MILSTEIN HAUSFELD
                                   & TOLL, P.L.L.C.

19                                 Michael D. Hausfeld
                                   Megan E. Jones

20                                 1100 New York Avenue, N.W.
                                   West Tower, Suite 500

21                                 Washington, D.C.  20005

22                                      - and -

23                                 Linda P. Nussbaum
                                   150 East 52nd Street, 30th Floor

24                                 New York, N.Y.  10022

25                                 Co-Chairmen of Plaintiffs' Executive Committee

26

27

28

1     MUCH SHELIST FREED DENENBERG
      AMENT & RUBENSTEIN, P.C.
2     Steven A. Kanner
      William H. London
3     Douglas A. Millen
      191 North Wacker Drive, Suite 1800
4     Chicago, Illinois 60606-1615
      Telephone: (312) 521-2000
5     Facsimile: (312) 521-2100

6     SAVERI & SAVERI, INC.
      Guido Saveri
7     R. Alexander Saveri
      111 Pine Street, Suite 1700
8     San Francisco, CA 94111
      Telephone: (415) 217-6810
9     Facsimile: (415) 217-6813

10    GLANCY BINKOW & GOLDBERG LLP
      Susan G. Kupfer
11    455 Market Street, Suite 1810
      San Francisco, CA 94105
12    Telephone: (415) 972-8160
      Facsimile: (415) 972-8166
13
      BERGER & MONTAGUE, P.C.
14    H. Laddie Montague, Jr.
      Ruthanne Gordon
15    1622 Locust Street
      Philadelphia, PA 19103
16    Telephone: (215) 875-3000
      Facsimile: (215) 875-4604
17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FED. ANTITRUST LAWS-
MDL Docket No. C-04-1648 (MJJ)                                                    -16-

## CERTIFICATE OF SERVICE

I, Caroline D. Loder, hereby declare under penalty of perjury as follows:

I am employed by Gold Bennett Cera & Sidener LLP, 595 Market Street, Suite 2300, San Francisco, California, 94105-2835.  I am over the age of eighteen years and am not a party to this action.

On March 18, 2005, I served a copy of the aforementioned **"SECOND AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL ANTITRUST LAWS"** to all counsel of record by electronic service pursuant to the Court's Order Regarding Electronic Service.  In addition, a copy of same was served on the parties listed on the attached Exhibit I, by causing true and correct copies of same to be enclosed in sealed envelopes and deposited in the U.S. Mail, postage prepaid.

Executed on March 18, 2005, at San Francisco, California.

_Caroline D. Loder_
Caroline D. Loder

1

# **EXHIBIT I**

2

KENNY NACHWALTER PA
Richard A. Arnold
William J. Blechman
201 South Biscayne Blvd., Suite 1100
Miami, FL 33131

Attorneys for Non-Class Plaintiff The
Goodyear Tire & Rubber Company

RODA NAST, PC
Dianne M. Nast
801 Estelle Drive
Lancaster, PA 17601

Attorneys for Non-Class Plaintiff RBX
Industries, Inc.

O'MELVENY & MYERS LLP
Ian Simmons
Benjamin G. Bradshaw
Matthew R. Cosgrove
1625 Eye Street, N.W.
Washington, D.C. 20006-4001

Attorneys for Defendant Crompton
Corporation and Uniroyal Chemical Company,
Inc.

GIBSON, DUNN & CRUTCHER LLP
D. Jarrett Arp
Adam J. Di Vincenzo
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306

Attorneys for Defendants Akzo Nobel
Chemicals, Inc.; Akzo Nobel Chemicals
International B.V.; Flexsys America L.P. and
Flexsys N.V.

JONES DAY
William O'Reilly
J. Andrew Read
Kevin B. Byrd
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

Attorneys for Defendants Bayer AG, Bayer
Corporation and Rhein Chemie Corporation