GOLD BENNETT CERA & SIDENER LLP
PAUL F. BENNETT (SBN 63318)
STEVEN O. SIDENER (SBN 121062)
JOSEPH M. BARTON (SBN 188441)
595 Market Street, Suite 2300
San Francisco, California 94105-2835
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
E-Mail: pfb@gbcslaw.com
E-Mail: sos@gbcslaw.com

COHEN MILSTEIN HAUSFELD & TOLL, P.L.L.C.
MICHAEL D. HAUSFELD
RICHARD A. KOFFMAN
MICHAEL W. BYRNE
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile (202) 408-4699
E-Mail: mhausfeld@cmht.com

- and -

LINDA P. NUSSBAUM
150 East 52nd Street, 30th Floor
New York, New York 10022
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
E-Mail: lnussbaum@cmht.com

Co-Chairs of Class Plaintiffs' Executive Committee

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE RUBBER CHEMICALS ANTITRUST LITIGATION | MDL Docket No. C-04-1648 MJJ |
| | Class Action |
| | **DECLARATION OF PAUL F. BENNETT IN SUPPORT OF APPLICATION FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES FOR THE CROMPTON SETTLEMENT** |
| THIS DOCUMENT RELATES TO: ALL ACTIONS. | Date: June 21, 2005<br>Time: 9:30 a.m.<br>Courtroom 11, 19th Floor |

#110555

I, Paul F. Bennett, declare and state as follows:

1. I am a partner at the law firm of Gold Bennett Cera & Sidener LLP. My firm has acted as counsel to the Rubber Chemicals Class Plaintiffs in this class action. I am submitting this declaration in support of the Rubber Chemicals Class Plaintiffs' Notice of Motion and Motion for an Interim Award of Attorneys' Fees From the Crompton Settlement and Reimbursement of Expenses.

2. Throughout this litigation, I have analyzed the financial condition and future financial prospects of Crompton Corporation and Uniroyal Chemical Company, inc. (jointly, "Crompton"). I considered information obtained from, *inter alia*: Crompton's filings with the Securities and Exchange Commission; documents related to the Department of Justice's criminal proceedings against Crompton and certain Crompton executives; Crompton's press releases; documents produced by various defendants in this litigation; settlement discussions with Crompton's counsel; discussions with economic experts; and representations made by Crompton in papers filed in this action. The following sets forth my understanding of the facts.

3. Crompton's financial condition in early 2004 was poor. As of March 31, 2004, its long term liabilities exceeded $2.15 billion. Approximately $350 million of its long term debt was coming due in the next two years and its credit facility was due to expire in the fall of 2004. Net cash flow from operations for the period ending March 31, 2004 was a negative $62 million. Crompton had only $35 million in cash, most of which was restricted by existing bank covenants. Crompton also faced significant, but unliquidated, exposure in several major antitrust cases.

4. In March 2004, Crompton entered into a plea agreement with the U.S. Department of Justice regarding criminal charges. Crompton agreed to plead guilty to conspiring to fix prices of certain rubber chemicals sold in the United States from 1995 to 2001. The plea agreement included a $50 million fine to be paid in six annual installments (without interest) beginning in 2004.

5. Crompton subsequently pled guilty in a Canadian Court to violating the Canadian competition laws. That pleas agreement included a $9 million CDN fine (approximately $7 million in U.S. dollars), payable in six annual installments (without interest) beginning in 2004.

#110555

DECL OF PAUL F. BENNETT IN SUPPORT OF APPLICATION FOR ATTYS' FEES & REIMBURSEMENT OF EXPENSES FOR THE CROMPTON SETTLEMENT - MDL Docket No. C-04-1648 MJJ         1

6. For the reasons stated above, as of early 2004, it appeared unlikely that the Rubber Chemicals Class would obtain a meaningful cash settlement from Crompton. We were faced with the prospect of accepting a small cash payment or pushing Crompton into bankruptcy.

7. Crompton made changes to its management team at about that same time. These changes included the appointment of a new Chief Executive Officer and new Chief Financial Officer. The new management team began to explore restructuring Crompton's balance sheet to increase its financial flexibility. Crompton wanted to renew or replace the expiring credit line and pay off the long-term debt which was coming due in the short-term. Crompton was also amenable to attempting to address the company's antitrust exposure, including this lawsuit.

8. Rubber Chemicals Class Counsel, including myself, met with Crompton beginning in early July 2004. The parties' goal was to maximize the recovery to the Rubber Chemicals Class while allowing Crompton to remain a viable company. Crompton represented that, even if the refinancing occurred, it still would have only a limited funds to resolve this case and multiple other antitrust actions. Thus, at our meeting on August 10, 2004, we discussed the concept of a global settlement that would resolve this action and other antitrust cases in with Crompton was a defendant.

9. On August 16, 2004, Crompton announced the completion of its $945 million refinancing program. The refinancing actually increased Compton's debt This meant that the period over which Crompton would make any settlement payments would be an important consideration. Crompton was also constrained by lender agreements that were part of the refinancing. These agreements effectively capped what the Rubber Chemicals Class and the plaintiff classes in several other antitrust actions could recover from Crompton, which weighed in favor of entering into some sort of global settlement.

10. Despite these new challenges, the parties continued their negotiations into early January 2005, when a global settlement agreement was reached. The global settlement provided a total of $97,000,000 in cash to be allocated among three cases: (a) this action; (b)*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, Case No. 3:03 MD 1542 (PCD) (D. Conn); and (c) *In re NBR Antitrust Litigation*, Master Civil Docket No. 03-1898 (W.D. Pa.).

#110555

DECL OF PAUL F. BENNETT IN SUPPORT OF APPLICATION FOR ATTYS' FEES & REIMBURSEMENT OF EXPENSES FOR THE CROMPTON SETTLEMENT - MDL Docket No. C-04-1648 MJJ

2

1  The Global Settlement Agreement outlined a detailed process to ensure that the money was
2  equitably allocated among the cases. A highly regarded Neutral, Kenneth Feinberg, oversaw the
3  allocation process.

4  11.  Through the allocation process, $62,000,000 was awarded to resolve the claims of
5  the Rubber Chemical Class. More than $37,000,000 of that amount has already been deposited
6  into an escrow account and the remainder must be fully paid by June 30, 2006. The money is
7  invested in instruments secured by the full faith and credit of the United States and interest is
8  accruing for the benefit of the Rubber Chemicals Class. Crompton still has two (2) payments to
9  make: one on or about December 31, 2005 and one on or about June 30, 2006. This relatively
10 quick payment significantly eliminated concerns about not actually receiving large portions of the
11 settlement money.

12  12.  Initially, we thought it was highly unlikely that we would obtain a cash settlement
13 of any significant amount. Nonetheless, Rubber Chemicals Class Counsel continued to vigorously
14 litigate against Crompton and pursue settlement based on the validity of their claims and
15 Crompton's ability to pay, and those efforts have resulted in a significant recovery for the Rubber
16 Chemicals Class.

17  13.  Rubber Chemicals Class Counsel recently filed a motion for attorneys' fees and
18 reimbursement of expenses in connection the settlement with "the Flexsys Defendants." Since
19 that time, Rubber Chemicals Class Counsel has incurred additional litigation expenses, primarily
20 for experts and consultants. We are in the process of obtaining documentation relating to these
21 expenses and will submit it to the Court no later than June 14, 2005. These expenses will not
22 exceed the $500,000 cap set forth in the Notice to the Rubber Chemicals Class.

23  I declare under penalty of perjury under the laws of the United States that the foregoing is
24 true and correct. Executed on this 23rd day of May, 2005 at San Francisco, California.

_____
Paul F. Bennett

#110555

DECL OF PAUL F. BENNETT IN SUPPORT OF APPLICATION FOR ATTYS' FEES & REIMBURSEMENT OF EXPENSES FOR THE CROMPTON SETTLEMENT - MDL Docket No. C-04-1648 MJJ     3