IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE RUBBER CHEMICALS ANTITRUST
LITIGATION

_____/

No. C 04-1648 MJJ

**ORDER GRANTING PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

Before the Court is Plaintiffs' Rule 23 motion for class certification in this multi-district litigation arising from an alleged conspiracy by Defendants to fix the prices of the chemicals used in the manufacture of tires and other rubber products.  Plaintiffs seek certification of the following class:

> All persons (excluding government entities, defendants, and the present or
> former parents, predecessors, subsidiaries and affiliates of the foregoing)
> which purchased rubber chemicals in the United States directly from any of
> the defendants, or any present or former parent, subsidiary or affiliate thereof,
> at any time during the period May 1, 1995 through December 31, 2001.

Plaintiffs also ask the Court to appoint Gold Bennett Cera & Sidener LLP ("Gold Bennett") and Cohen, Milstein, Hausfeld & Toll, P.L.L.C. ("Cohen Milstein") as class counsel.  Having read and considered the parties' briefs and the arguments proffered at the hearing on Plaintiffs' motion, the Court **GRANTS** Plaintiffs' motion for the following reasons.

## FACTUAL BACKGROUND

In its natural state, raw rubber has little commercial application.  The products involved in

United States District Court
For the Northern District of California

this litigation – primary, secondary, or ultra accelerators; activators; vulcanizing agents; antioxidants; and antiozonants (hereinafter, collectively referred to as "Rubber Chemicals") – facilitate the conversion of raw rubber into finished rubber.  The transformation from raw to finished rubber is achieved through vulcanization, which is the process of combining raw rubber with Rubber Chemicals at a high temperature.  Rubber Chemicals facilitate the vulcanization process and protect the finished rubber against degradation caused by oxygen and ozone.  Much of the U.S. market for Rubber Chemicals is supplied by three large producers and their affiliates:  Flexsys America L.P., Bayer A.G., and Crompton Corporation.  These entities are three of the defendants (alleged co-conspirators) in this multi-district litigation.  These three producers are believed to account for up to 75% of Rubber Chemicals sales.

Direct purchasers of Rubber Chemicals, including tire companies and industrial manufacturers, brought this lawsuit alleging that Defendants conspired to fix the prices of Rubber Chemicals sold in the United States in violation of the Sherman Act, 15 U.S.C. § 1.  Plaintiffs further allege that as a result of the conspiracy, they paid more for Rubber Chemicals than they otherwise would have and, thus, were injured.  Plaintiffs seek, among other things, injunctive relief and treble damages pursuant to sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

The first complaint in this multi-district litigation was filed on April 8, 2003.  That case and several subsequently-filed cases were consolidated and a Consolidated Amended Complaint was filed on November 3, 2003 (the "Complaint").  Plaintiffs recently settled their claims with one subset of Defendants – Flexsys N.V., Flexsys America L.P., Akzo Nobel Chemicals International B.V., and Akzo Nobel Chemicals, Inc. (collectively, the "Flexsys Defendants") – and are in the process of settling with another subset – Crompton Corporation and Uniroyal Chemical Company, Inc. (collectively, the "Crompton Defendants").  Accordingly, Plaintiffs' motion for class certification is opposed only by the remaining Defendants – Bayer Corporation, Bayer AG, and Rhein Chemie Corporation (collectively, the "Bayer Defendants").

In 2004, Defendant Bayer AG pled guilty in a parallel criminal case to one count of a felony charge for violating Section 1 of the Sherman Act.  That count of the indictment alleged that Bayer AG conspired with unnamed rubber chemical producers to suppress and eliminate competition for

United States District Court

For the Northern District of California

certain rubber chemicals sold in the United States and elsewhere from mid-1995 to 2001.  As part of the plea, Bayer AG agreed to pay a $66 million criminal fine.

**LEGAL STANDARD**

To maintain a class action under Rule 23, the proponents of the class must first satisfy the four prerequisites of Rule 23(a).  According to Rule 23(a), a class may be certified only if:

    (1)     the class is so numerous that joinder of all members is impracticable;

    (2)     there are questions of law or fact common to the class;

    (3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4)     the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  If these requirements are met, the class proponents must also show that they have met one of the four disjunctive prerequisites of Rule 23(b).  Under this subsection, the Court must find either:  (1) that the prosecution of individual actions would create a risk of inconsistent verdicts that would establish incompatible standards of conduct for defendant or would be dispositive of the claims of non-party class members or substantially impede the ability of non-party class members to pursue their own claims; (2) that the defendant acted or refused to act on grounds generally applicable to the class, so that declaratory or injunctive relief is appropriate with respect to the entire class; or (3) that common questions of law or fact predominate and that a class action is superior to other available methods of adjudication.  FED. R. CIV. P. 23(b)(1)-(3).  Here, Plaintiffs seek class certification under Rule 23(b)(3).  According to that subsection, the matters pertinent to the findings include:

    (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

FED. R. CIV. P. 23(b)(3).

The proponents of the class bear the burden of demonstrating that all the prerequisites for class designation are met.  *See In re Northern District of California Dalcon Shield IUD Products*

United States District Court

For the Northern District of California

*Liability Litigation*, 693 F.2d 847, 854 (9th Cir. 1982).  In analyzing whether the putative class meets the requirements of Rule 23, a court is to take the substantive allegations of the complaint as true, and may also consider extrinsic evidence submitted by the parties.  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).

"Class actions play an important role in the private enforcement of antitrust actions."  *In re Citric Acid Antitrust Litig.*, 1996 U.S. Dist. LEXIS 16409, at *22 (N.D. Cal. Oct. 2, 1996).  "For this reason, courts resolve doubts in these actions in favor of certifying the class."  *Id.* (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 688–89 (D. Minn. 1995)).  Courts have stressed that price-fixing cases are appropriate for class certification because "a class-action lawsuit is the most fair and efficient means of enforcing the law where antitrust violations have been continuous, widespread, and detrimental to as yet unidentified consumers."  *Coleman v. Cannon Oil Co.*, 141 F.R.D. 516, 520 (M.D. Ala. 1992).

Pursuant to Federal Rule of Procedure 23(g), a court that certifies a class must appoint class counsel and that counsel must "fairly and adequately represent the interests of the class."

## ANALYSIS

**A.    Rule 23(a)**

Plaintiffs contend that the purported class meets all four of the requirements of Rule 23(a). The Bayer Defendants do not contest that these requirements are met.  (Opposition at 5:12–14.)[1] Despite Defendants' concession, the Court briefly addresses the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a).

**1.    Numerosity**

Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable.  Plaintiffs do not need to state the exact number of potential class members, nor is a specific number of class members required for numerosity.  *Bates v. United Parcel Service*, 204

---

[1] Instead, Defendants focus their opposition on whether the requirements of Rule 23(b)(3) are met here.  This argument will be addressed in section B, *infra.*

United States District Court
For the Northern District of California

F.R.D. 440, 444 (N.D. Cal. 2001).[2]  A court may make common sense assumptions to support a finding that joinder would be impracticable.  1 Robert Newberg, *Newberg on Class Actions*, § 3:3 (4th Ed. 2002) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.").  In addition, the fact that a class is geographically dispersed, and that class members are difficult to identify, supports class certification.  *Id.* at § 3:6; *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996).

In this case, the evidence indicates that the purported class is made up of more than 1,000 individuals or business entities dispersed throughout the United States.  As a matter of common sense, the purported class is large and geographically diverse.  For these reasons, the Court finds that joinder of all class members is impracticable and that the putative class satisfies Rule 23(a)(1)'s numerosity requirement.

**2.      Commonality**

Rule 23(a)(2) requires that there be questions of law or fact that are common to the class.  "Courts consistently have held that the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist."  *In re Sugar Industry*, 1976 WL 1374, at *13 (N.D Cal. May 21, 1976).  In this case, the claims asserted involve the same core questions.  Specifically at issue is whether:  (1) Defendants acted in concert to fix, maintain or stabilize prices, and to allocate markets for rubber chemicals; (2) Defendants concealed the alleged conspiracy; (3) whether Defendants' conduct artificially-inflated the prices of rubber chemicals; and (4) whether putative class members were injured as a result of Defendants' conduct and, if so, what the appropriate class-wide measure of damages would be.  Accordingly, the Court finds that Rule 23(a)(2)'s commonality requirement is satisfied here.

**3.      Typicality**

Rule 23(a)(3) requires that the claims of the named plaintiffs be typical of those of the class.  "In the antitrust context, typicality 'will be established by plaintiffs and all class members alleging the same antitrust violations by defendants.'"  *Thomas & Thomas Rodmakers, Inc., et al. v. Newport*

---

[2] But it has been suggested that a class exceeding one hundred members would satisfy the numerosity requirement. *See Berlowitz v. Nob Hill Masonic Management, Inc.*, 1996 U.S. Dist. LEXIS 22599 at *7 (N.D. Cal. 1996).

5

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   *Adhesives and Composites, Inc., et al.*, 209 F.R.D. 159 (C.D. Cal. 2002) (quoting *In re Playmobil*

2   *Antitrust Litig.*, 35 F. Supp. 2d 231 (E.D.N.Y. 1998)).  In the instant case, the named plaintiffs'

3   claims are typical of the claims of the putative class.  Plaintiffs allege a conspiracy to fix, raise,

4   maintain, and stabilize the price of Rubber Chemicals.  As a result of the alleged conspiracy, the

5   named plaintiffs, like the members of the putative class, purchased Rubber Chemicals, at artificially-

6   inflated prices, from Defendants between May 1995 and December 2001.  Accordingly, the Court

7   finds that the claims of the putative class satisfy the typicality requirement of Rule 23(a)(3).

8           **4.**        **Adequacy of Representation**

9           Rule 23(a)(4) requires that the representative parties will fairly and adequately protect the

10  interests of the class.  The adequacy requirement consists of two separate inquiries.  First, the

11  representative plaintiffs must not possess interests that are antagonistic to the interests of the

12  purported class.  Second, the plaintiffs must be represented by counsel of sufficient diligence and

13  competence to fully litigate the claims.  *Local Joint Executive Bd. of Culinary/Bartender Trust Fund*

14  *v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).  Here, both requirements are met.

15          First, the named plaintiffs, like each member of the purported class, were allegedly

16  overcharged, due to Defendants' alleged price-fixing conspiracy, for Rubber Chemicals purchased

17  from Defendants between May 1995 and December 2001.  Additionally, the named plaintiffs and the

18  putative class members were allegedly injured in the same manner and seek the same relief.  Thus,

19  there are no conflicts of interest between the named plaintiffs and members of the putative class.

20  Second, Plaintiffs have retained highly skilled and experienced counsel to represent them in their

21  actions against Defendants and there is no indication that Plaintiffs' counsel is incapable of litigating

22  vigorously on behalf of the putative class.  Accordingly, the Court finds that the proposed class

23  satisfies the adequate representation requirement of Rule 23(a)(4).

24                                   ----

25          The purported class satisfies all four of the requirements of Rule 23(a).

26  **B.**      **Rule 23(b)**

27          The Court must now determine whether this case fits within one of the three subsections of

28  Rule 23(b).  Plaintiffs urge the Court to find that the lawsuit satisfies both the predominance and

1    superiority requirements set forth in Rule 23(b)(3).  Defendants argue that those requirements are

2    not met here.  The Court agrees with Plaintiffs.

3              **1.        Common Questions Predominate Over Individual Questions.**

4              In Sherman Act antitrust price-fixing actions such as this one, plaintiffs must establish:  (1)

5    that there was a conspiracy to fix prices, and prices were fixed, in violation of the antitrust laws; (2)

6    that the plaintiffs were injured because they purchased products at prices that, as a result of the

7    conspiracy, were higher than they should have been; and (3) damages.  *See Citric Acid*, 1996 U.S.

8    Dist. LEXIS 16409, at *17.  On a motion for class certification, the plaintiffs' burden is to "establish

9    that common or generalized proof will predominate at trial with respect to these three essential

10   elements of their antitrust claim." *Id*. (citations omitted).  "In deciding . . . whether common

11   questions of law or fact in the case predominate over questions affecting only individual members,

12   . . . the Court must focus on liability issues." *Id*. (citation omitted).

13             Here, Defendants do not dispute that the existence of the conspiracy and the alleged price-

14   fixing are common to the litigation.  Instead, Defendants contend that individualized issues

15   regarding impact and damages will overwhelm the common issues such that the Court should not

16   find that common issues predominate.

17             **a.        Common Issues Regarding Impact Predominate Over Individual Issues**.

18             Defendants assert that Plaintiffs have failed to meet the predominance requirement here

19   because they cannot demonstrate impact through common proof on a class-wide basis.  Defendants'

20   argument is not persuasive.

21             First, the Court notes that "the great weight of authority suggests that the dominant issues in

22   cases like this are whether the charged conspiracy existed and whether price-fixing occurred."

23   *Citric Acid*, 1996 U.S. Dist. LEXIS 16409, at *21.  "[B]ecause the gravamen of a price-fixing claim

24   is that the price in a given market is artificially high, there is a presumption that an illegal

25   price-fixing scheme impacts upon all purchasers of a price-fixed product in a conspiratorially

26   affected market.'" *Potash*, 159 F.R.D. at 695 (citing *In re Alcoholic Beverages Antitrust Litig.*, 95

27   F.R.D. 321, 327 (E.D. N.Y. 1982)); *see also* 4 *Newberg on Class Actions*, §§ 18.28 at 18-98 (1992)

28   ("As a rule, the allegation of price-fixing conspiracy is sufficient to establish predominance of

United States District Court

For the Northern District of California

1   common questions.")

2       In *Citric Acid*, the court certified a class of purchasers in a horizontal price-fixing case

3   similar to this one.  The defendants there, like Defendants here, argued that the plaintiffs' motion for

4   class certification should be denied because, they argued, the plaintiffs had failed to demonstrate

5   common proof of class-wide impact such that the predominance requirement of Rule 23(b)(3) was

6   not met.  The defendants argued that because citric acid, the product at issue, comes in many forms

7   and is used for many purposes, the pricing varies between products, making common proof of

8   impact impossible.  The court rejected the defendants' argument and found that common issues

9   predominated even in the absence of proof of class-wide impact.  "Diversity of products and pricing

10  does not necessarily mean that plaintiffs cannot show class-wide impact . . . ."  Indeed,

11  "[c]ontentions of infinite diversity of product, marketing practices, and pricing have been made in

12  numerous cases and rejected."  *Citric Acid*, 1996 U.S. Dist. LEXIS 16409, at *18 (quoting *In re*

13  *Folding Carton Antitrust Litig.*, 75 F.R.D. 727, 734 (N.D. Ill. 1977)).  "[C]onspiracy [is] the

14  overriding predominant question."  *Id.*

15      Second, class-wide impact is usually found to exist where the defendants are shown to have

16  used collusively-set list prices for the product at issue.  "[H]igh list prices prove[] the fact of impact,

17  even if the degree of impact differed between products and purchasers."  *Citric Acid*, 1996 U.S. Dist.

18  LEXIS 16409, at *19–20; *see also In re Industrial Diamonds Antitrust Litig.*, 167 F.R.D. 374, 383

19  (S.D.N.Y. 1996) (common impact shown where conspiracy resulted in inflated list prices).  In the

20  instant case, Plaintiffs have alleged, and pointed to, national price lists used by Defendants that

21  reflect collusively-set prices for Rubber Chemicals.  This alone suggests the fact of common impact,

22  "even if the degree of impact differed."  That some members of the proposed class may have

23  received discounts on the chemicals they purchased such that they did not pay the prices set does not

24  counsel against class certification.  As the court explained in *Industrial Diamonds*:

25      In a number of price-fixing cases concerning industries where discounts and
        individually negotiated prices are common, courts have certified classes where
26      the plaintiffs have alleged that the defendants conspired to set an artificially
        inflated base price from which negotiations for discounts began.  The theory that
27      underlies these decisions is, of course, that the negotiated transaction prices
        would have been lower if the starting point for negotiations had been list prices
28      set in a competitive market.  Hence, if a plaintiff proves that the alleged
        conspiracy resulted in artificially inflated list prices, a jury could reasonably

8

conclude that each purchaser who negotiated an individual price suffered some injury.

167 F.R.D. at 383.

Third, for purposes of class certification, it is not necessary for Plaintiffs to show that every single class member was injured by the alleged price-fixing conspiracy. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 252 (D. De. 2002); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 197, 321 (E.D. Mich. 2001) ("courts have routinely observed that the inability to show injury as to a few does not defeat class certification where the plaintiffs can show widespread injury to the class").

Fourth, even if conspiracy were not the overriding question and Plaintiffs were required to show common proof of class-wide impact under Rule 23(b)(3), the Court finds that Plaintiffs have done so here. Defendants are right that some courts, albeit "a smaller number," "carefully examine the facts of each case in order to determine whether common proof of impact is possible." *Citric Acid*, 1996 U.S. Dist. LEXIS 16409, at *17 (citing *Windham v. American Brands, Inc.*, 565 F.2d 59 (4th Cir. 1977)). However, even in those cases, courts "only require that plaintiffs 'come forward with seemingly realistic methodologies." *Id*. (citing *In re Brand Name Prescription Drug Antitrust Litig.*, 1996 WL 478547, at *5 (N.D. Ill. 1994). "[I]n considering a class certification motion, a court must consider only whether plaintiffs have made a threshold showing that 'what proof they will offer will be sufficiently generalized in nature that . . . the class action will provide a tremendous savings of time and effort.'" *Potash*, 159 F.R.D. at 697 (citation omitted). Here, Plaintiffs have made that threshold showing.

Dr. Douglas F. Greer, Plaintiffs' economics expert, proposes a correlation analysis as a method for demonstrating common impact that has been upheld by numerous courts. *See, e.g., In re Catfish Antitrust Litig*, 826 F. Supp. 1019 (N.D. Miss. 1993). Based on his review of numerous documents produced by Defendants, Dr. Greer found high price correlations between buyers and across products. (Declaration of Douglas Greer ("Greer Decl.") at ¶¶ 76–82.) Defendants' expert, Dr. William C. Myslinski, disagrees with Dr. Greer's approach. However, "[t]he certification stage of this litigation is not . . . the proper forum in which to resolve this battle [of the experts]." *Potash*, 159 F.R.D. at 697. "[W]hether or not plaintiffs' expert is correct in his assessment of common

9

United States District Court
For the Northern District of California

1  impact/injury is for the trier of fact to decide, at the proper time." *Id*. (citation omitted).  Plaintiffs

2  need only show that their proposed method is realistic.  They have done so here.

3       As the court held in *Citric Acid*, even though Plaintiffs need not have shown common proof

4  of class-wide impact to satisfy the predominance requirement of Rule 23(b)(3), particularly since

5  they pointed to high list prices set by Defendants, they have satisfactorily done so by presenting a

6  realistic method, as described by their expert, for proving common impact.[3]  The Court finds that

7  individualized issues regarding impact do not predominate over common issues here.

8
           **b.      Common Issues Regarding Damages Predominate Over Individual
9                    Issues**.

10      Defendants argue that the methodologies proposed by Plaintiffs' expert, Dr. Greer, fail to

11  establish that the amount of damages allegedly sustained by each putative class member can be

12  demonstrated through the use of common proof.  The Court disagrees.

13      "Antitrust plaintiffs have a limited burden with respect to showing that individual damages

14  issues do not predominate.  Plaintiffs do not need to supply a precise damage formula at the

15  certification stage of an antitrust action.  Instead, assessing whether to certify a class, the court's

16  inquiry is limited to whether or not the proposed methods are so insubstantial as to amount to not

17  method at all." *Potash*, 159 F.R.D. at 697 (citation omitted).  "Moreover, the fact that the damages

18  calculation may involve individualized analysis is not by itself sufficient to preclude certification

19  when liability can be determined on a class-wide basis." *Id*; *see also In re Workers' Compensation*,

20  130 F.R.D. 99, 110 (D. Minn. 1990) ("individual questions of damages are often a problem

21  encountered in an antitrust action and are rarely a barrier to certification.")

22      Plaintiffs' expert has proffered two reasonable and commonly-used formulaic approaches to

23  calculating damages.  Dr. Greer opines that damages suffered by the putative class members may be

24
25      [3] Defendants liken this case to the *Sample v. Monsanto*, 218 F.R.D. 644 (E.D. Mo. 2003), case.
    There, the district court denied the plaintiffs' motion for class certification on the ground that the
26  plaintiffs could not show, pursuant to the requirements of Rule 23(b)(3), that impact could be proven
    on a systematic, class-wide basis with common proof.  But there, the products at issue were not
27  commodity products.  The market for seeds was deemed "highly individualized depending upon
    geographic location, growing conditions, [and] consumer preference." *Id*. at 650–51.  Here, to the
28  contrary, the Rubber Chemicals are highly fungible.  Thus, Defendants' reliance on *Monsanto* is
    misplaced.

10

determined, with a substantial degree of precision, through the use of a "benchmark" approach, whereby the prices that class members paid during the Class Period are compared to the prices they would have paid absent the conspiracy.  In the alternative, Dr. Greer proposes a "yardstick" approach, by which the prices of Rubber Chemicals in the United States during the Class Period are compared to those in Europe where the market was more competitive.  Defendants attack the specifics of Dr. Greer's proposed methodologies but their expert, Dr. Myslinski acknowledged that both approaches are "useful."  Defendants have not established that Plaintiffs' expert's proposed methodologies would foreclose a class-wide common method of proof on damages.  The Court need only determine that Plaintiffs have proffered a method that is not so insubstantial or unreasonable as to amount to no method at all.  They have met their low burden here.

---

The Court finds that Plaintiffs have sufficiently demonstrated that common issues predominate over potential individual impact or damage issues such that the predominance requirement of Rule 23(b)(2) is met.

### 2.    A Class Action is Superior to Other Available Methods For the Fair and Efficient Adjudication of This Case

Defendants argue that proceeding as a class action here is not superior to other available methods because individual questions of law and fact regarding impact and damages will predominate over the questions common to the proposed class.  Having already determined that common issues predominate here, the Court finds Defendants' argument against superiority unpersuasive.  The Court is satisfied that proceeding as a class action is the best method for the fair and efficient adjudication of this case.

---

Plaintiffs have satisfied Rule 23(b)(3)'s predominance and superiority requirements.

### C.    Rule 23(g) – Appointing Class Counsel

Federal Rule of Civil Procedure 23(g)(1) provides that "a court that certifies a class must appoint class counsel" and that "[a]n attorney appointed to serve as class counsel must fairly and adequately represent the interests of the class."  In appointing class counsel, courts must consider:

11

(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  FED. R. CIV. P. 23(g)(1)(C)(I).  Courts may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  FED. R. CIV. P. 23(g)(1)(C)(ii).

In the instant lawsuit, it is undisputed that the counsel selected by the named plaintiffs – Gold Bennett and Cohen Milstein – have extensive experience and expertise in antitrust and other class actions, as well as other complex litigation, and have successfully prosecuted such cases in courts across the country.  Gold Bennett and Cohen Milstein, Co-Chairs of the Plaintiffs' Executive Committee, have worked together to identify, investigate, and prosecute the claims alleged here.  They have reviewed documents produced in discovery, worked with economists to analyze impact and damage methodologies, analyzed comprehensive transactional data, briefed legal issues, and engaged in negotiations with opposing counsel.  Gold Bennett and Cohen Milstein have also devoted considerable attorney resources to this case and have associated with other counsel, experienced in class actions, who have assisted in the matter as members of the Plaintiffs' Executive Committee. There is every indication that Gold Bennett and Cohen Milstein are well equipped to fairly and adequately represent the interests of the Class.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiffs' motion for class certification. The following class is certified:

> All persons (excluding government entities, defendants, and the present or former parents, predecessors, subsidiaries and affiliates of the foregoing) which purchased rubber chemicals in the United States directly from any of the defendants, or any present or former parent, subsidiary or affiliate thereof, at any time during the period May 1, 1995 through December 31, 2001.

The Court also hereby appoints Gold Bennett and Cohen Milstein as Class Counsel.

**IT IS SO ORDERED.**

Dated: September_23_, 2005

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE

United States District Court
For the Northern District of California