GOLD BENNETT CERA & SIDENER LLP
PAUL F. BENNETT (State Bar No. 63318)
STEVEN O. SIDENER (State Bar No. 121062)
JOSEPH M. BARTON (State Bar No. 188441)
C. ANDREW DIRKSEN (State Bar No. 197378)
595 Market Street, Suite 2300
San Francisco, California 94105-2835
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
E-Mail: pfb@gbcslaw.com
E-Mail: sos@gbcslaw.com

COHEN MILSTEIN HAUSFELD & TOLL, P.L.L.C.
MICHAEL D. HAUSFELD
RICHARD A. KOFFMAN
BENJAMIN D. BROWN
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, D.C. 20005
Telephone: (202) 408-4600
Facsimile (202) 408-4699
E-Mail: mhausfeld@cmht.com

- and -

LINDA P. NUSSBAUM
150 East 52nd Street, 30th Floor
New York, New York 10022
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
E-Mail: lnussbaum@cmht.com

Co-Chairs of Plaintiffs' Executive Committee

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE RUBBER CHEMICALS ANTITRUST LITIGATION | MDL Docket No. C-04-1648 MJJ |
| | <u>Class Action</u> |
| | **PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN SUPPORT THEREOF** |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS. | Date: January 9, 2007<br>Time: 9:30 a.m.<br>Place: Courtroom of the Hon. Martin J. Jenkins, 19th Floor |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Overview Of The Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    The Crompton Settlement Negotiations . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    A Fee Award Is Warranted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.    A 25% Fee Award Is Fair And Appropriate . . . . . . . . . . . . . . . . . . . . . . . 6

         1.    The Result Achieved . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

         2.    The Work Performed By Class Counsel . . . . . . . . . . . . . . . . . . . 9

         3.    The Contingent Nature Of The Case . . . . . . . . . . . . . . . . . . . . 10

         4.    Percentages Awarded In Other Cases . . . . . . . . . . . . . . . . . . . 11

         5.    The Skill and Efficiency of Plaintiffs' Counsel . . . . . . . . . . . . . 13

         6.    No Objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    C.    Reimbursement Of Expenses Is Appropriate . . . . . . . . . . . . . . . . . . . . . . 14

         1.    Litigation Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

         2.    Payments To The Class Representatives . . . . . . . . . . . . . . . . . . 15

IV.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN
SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ

i

115743

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alpine Pharmacy v. Chas. Pfizer & Co., Inc.*
481 F.2d 1045 (2d Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*Anixter v. Home-Stake Prod. Co.*
77 F.3d 1215 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Arenson v. Board of Trade*
372 F. Supp. 1349 (N.D. Ill. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Backman v. Polaroid Corp.*
910 F.2d 10 (1st Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Behrens v. Wometco Enterprises, Inc.*
118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) . . . . . . . . . . . 8

*Blum v. Stenson*
465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*Boeing Co. v. Van Gemert*
444 U.S. 472 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bogosian v. Gulf Oil Corp.*
621 F. Supp. 27 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bridgestone Americas Holding, Inc., et al. v. Chemtura Corp., et al.*
Case No. C-06-5700 (N.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cimarron Pipeline Construction, Inc. v. Nat'l Council on Compensation Ins.*
1993 WL 355466 (W.D. Ok. June 8, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Diamond v. Fogelman,* [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH)
¶96,980 (E.D.N.Y. July 30, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Fischel v. Equitable Life Assur. Society of U.S.*
307 F.3d 997 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Fisher Bros. v. Phelps Dodge Industries, Inc.*
604 F. Supp. 446 (E.D. Pa. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fortner Enterp., Inc. v. U.S. Steel Corp.*
394 U.S. 495 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

*Harris v. Marhoefer*
24 F.3d 16 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hawaii v. Standard Oil Co.*
405 U.S. 251 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN
SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ

ii

115743

# **TABLE OF AUTHORITIES**
### (Continued)

Page

*Hensley v. Eckerhart*
461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hughes v. Microsoft Corp.*
No. C98-1646C, C93-0178C, 2110 WL 34089697 (W.D. Wash. Mar. 26, 2001) . . . . . 16

*In re Art Materials Antitrust Litig.*
100 F.R.D. 367 (N.D. Ohio 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Automotive Refinishing Paint Antitrust Litig.*
2004 WL 1068807 (E.D. Pa. May 11, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Buspirone Antitrust Litig.*
No. 01-CV-7951 (JGK) (S.D.N.Y. April 1, 2003) . . . . . . . . . . . . . . . . . . . . 12

*In re Cardizem CD Antitrust Litig.*
No. 99-73259 (E.D. Mich. Nov. 26, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Catfish Antitrust Litig.*
939 F. Supp. 493 (N.D. Miss. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*In re Cement and Concrete Antitrust Litig.*
1981-1 Trade Cases (CCH) ¶ 63,892 (D. Ariz. 1981) . . . . . . . . . . . . . . . . . . . 9

*In re Equity Funding Corp. Sec. Litigation*
438 F. Supp. 1303 (C.D. Cal. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re General Public Util. Sec. Litig.*, [1983-84 Transfer Binder] Fed. Sec. L. Rep. (CCH)
¶ 99,566 (D.N.J. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Ikon Office Solutions, Inc. Secs. Litig.*
194 F.R.D. 166 (E.D. Pa. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re King Resources Co. Sec. Litig.*
420 F. Supp. 610 (D. Colo. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*In re Lease Oil Antitrust Litig.*
186 F.R.D. 403 (S.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Linerboard Antitrust Litig.*
2004 WL 1221350 (E.D. Pa. June 2, 2004) . . . . . . . . . . . . . . . . . . . . . 3, 8, 9, 12

*In re Lorazepam & Clorazepate Antitrust Litig.*
2003 WL 2203774 (D.D.C. June 16, 2003) . . . . . . . . . . . . . . . . . . . . . . 10, 14

*In re M.D.C. Holdings Sec. Litig.*
1990 WL 454747 (S.D. Cal. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN
SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ

iii

115743

*In re Mego Financial Corp. Securities Litig.*
213 F.3d 454 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Pacific Enterprises Secs. Litig.*
47 F.3d 373 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Plastic Tableware Antitrust Litig.*
1995 WL 678663 (E.D. Pa. Oct. 25, 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Relafen Antitrust Litig.*
No. 01-12239-WGY (D. Mass. April 9, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Remeron Direct Purchaser Antitrust Litig.*
2005 WL 3008808 (D. N.J. Nov. 9, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 12

*In re Rent-Way Sec. Litig.*
305 F. Supp. 2d 491 (W.D. Pa. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Rubber Chemicals Antitrust Litig.*
232 F.R.D. 346 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 13

*In re Sequoia Systems, Inc. Sec. Litig.*
1993 WL 616694 (D. Mass. Sept. 10, 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Shell Oil Refinery*
155 F.R.D. 552 (E.D. La. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re SmithKline Beckman Corp. Sec. Litig.*
751 F. Supp. 525 (E.D. Pa. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*In re Sorbates Direct Purchaser Antitrust Litig.*
Nos. 98-4886, 99-1358, 99-1499, 99-2145, 99-3854, 99-4254, 99-4473,
2002 WL 31655191 (N.D. Cal. Nov. 15, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Terazosin Hydrocholride Antitrust Litig.*
No. 99-MDL-1317 (S.D.Fla. Apr. 19, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Travel Agents Antitrust Litig.*
953 F. Supp. 280 (D. Minn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Vitamins Antitrust Litig.*
2001 WL 34312839 (D.D.C. July 16, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*J. N. Futia Co. v. Phelps Dodge Industries, Inc.*
1982 WL 1892 (S.D.N.Y. Sept. 17, 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kirchoff v. Flynn*
786 F.2d 320 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES: MEMORANDUM IN
SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ

iv

115743

# TABLE OF AUTHORITIES
## (Continued)

**Page**

*Malanka v. de Castro*, [1991-91 Transfer Binder] Fed. Sec. L. Rep. (CCH)
    ¶95,657 (D. Mass. Nov. 20, 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*McKenzie Constr., Inc. v. Maynard*
    823 F.2d 43 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.*
    381 U.S. 311 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*North Shore Hematology-Oncology Associates, P.C. v. Bristol Myers Squibb Co.*
    No. 1:04cv248 (EGS) (D.D.C. Nov. 30, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Paul, Johnson, Alston & Hunt v. Graulty*
    886 F.2d 268 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 8

*Phemister v. Harcourt Brace Jovanovich, Inc.*
    1984 WL 21981 (N.D. Ill. Sept. 14, 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pillsbury Co. v. Conboy*
    459 U.S. 248 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Presley v. Carter Hawley Hale Profit Sharing Plan*
    No. C9704316, 2000 WL 16437 (N.D. Cal. Jan. 7, 2000) . . . . . . . . . . . . . . . . . 16

*Reitner v. Sonotone Corp.*
    442 U.S. 330 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Shaw v. Toshiba America Information Systems, Inc.*
    91 F. Supp. 2d 942 (E.D. Tex. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sherin v. Smith*, [1987-1988 Transfer Binder] Fed. Sec. L. Rep. (CCH)
    ¶93,582 (E.D. Pa. Oct. 22, 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Six Mexican Workers v. Arizona Citrus Growers*
    904 F.2d 1301 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Torrisi v. Tucson Elec. Power Co.*
    8 F.3d 1370 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Van Vranken v. Atlantic Richfield Co.*
    901 F. Supp. 294 (N.D. Cal. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Ward v. Succession of Freeman*
    854 F.2d 780 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN
SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ

v

115743

**Page**

*Weddle v. Frito-Lay, Inc.*
   No. C-99-05272, 2001 WL 182374 (N.D. Cal. Feb. 21, 2001) . . . . . . . . . . . . . . . . . . . . 16

**STATUTES, RULES AND REGULATIONS**

15 U.S.C. §1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Rules of Civil Procedure

   Rule 23(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   Rule 54(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

   Rule 54(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**OTHER AUTHORITIES**

1 Alba Conte, *Attorney Fee Awards* §1.09 (2d Ed. 1993) . . . . . . . . . . . . . . . . . . . . . . . 10

Thomas E. Willging, et al., *Empirical Study of Class Actions in*
   *Four Federal District Courts: Final Report to the Advisory Committee*
   *on Civil Rules* (Federal Judicial Center 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN
SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ

vi

115743

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 9:30 a.m. on January 9, 2007, Plaintiffs will, and hereby do, move before the Hon. Martin J. Jenkins, United States District Judge, at the United States Courthouse, 450 Golden Gate Avenue, Courtroom 11, 19th Floor, San Francisco, California, for an award of attorneys' fees in the amount of 25% of the Crompton Settlement Fund, reimbursement of litigation expenses in the amount of $39,208.35, including interest on those amounts from the date deposited to the date paid, and payments to the Class Representatives for their time and effort representing the Class throughout the litigation. This motion is brought pursuant to Fed. R. Civ. P. Rules 23(h), 54(b) and 54(d)(2) and the Court's Order Granting Preliminary Approval Of Proposed Settlement With The Crompton Defendants, entered on October 25, 2006.

This motion is made on the grounds that (a) such fees are fair and reasonable in light of Plaintiffs' efforts in creating the Crompton Settlement Fund; (b) the requested fee comports with the Ninth Circuit's 25% benchmark in common fund cases; (c) the expenses for which reimbursement is sought were reasonably and necessarily incurred in connection with the prosecution of this action; and (d) a reasonable payment to each Class Representative for their efforts on behalf of the Class is warranted and appropriate.

This motion is based on the following memorandum of points and authorities; the Declarations of Paul F. Bennett ("Bennett Declaration"), the Declarations of Benjamin D. Brown, Ruthanne Gordon, Susan G. Kupfer and Guido Saveri In Support Of Plaintiffs' Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses; the Declaration of Lisa Poncia; the Settlement Agreement; all pleadings and papers on file in this action; and any additional evidence or argument that may be presented at the hearing on this motion.

//
//
//
//

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ
1

115743

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs and their counsel ("Class Counsel") respectfully submit this Memorandum In Support Of Their Motion For An Award Of Attorneys' Fees And Reimbursement Of Expenses in connection with successfully obtaining a significant settlement with defendants Crompton Corporation (now known as Chemtura Corporation) and Uniroyal Chemical Company, Inc. (now known as Chemtura USA Corporation) (collectively, "Crompton").

The Settlement was achieved following complicated and prolonged settlement negotiations which spanned more than two years. Prior to and during these negotiations, Plaintiffs engaged Crompton in expensive and hard-fought litigation. Crompton was well-financed and represented by able counsel with significant resources to mount a strong defense. Notwithstanding the significant challenges and risks that they faced, Class Counsel have recovered $51 million in cash from Crompton.

By any measure, the Settlement with Crompton represents an excellent recovery. This settlement follows more than one year after Crompton terminated a $62 million settlement payable over time as a result of excessive opt-outs. Since that time, Crompton has settled with most of those opt-outs. Those opt-outs therefore are excluded from the Class in this settlement. They have already been paid by and have released Crompton. In addition, three companies (two of which opted out of the previous Crompton settlement) recently filed suit against Crompton in federal court in Tennessee through separate counsel.[1] These three companies are also excluded from the Class.[2] As a result, the Class, as defined in the current Settlement, purchased approximately 24% of the amount of Rubber Chemicals that the Class, as defined in the prior Crompton settlement, purchased. Bennett Declaration, ¶5. These facts further complicated an already difficult negotiation.

---

[1] That action entitled *Bridgestone Americas Holding, Inc., et al. v. Chemtura Corp., et al.*, Case No. C-06-5700 (N.D. Cal.) (MJJ) has been transferred to this Court by the Judicial Panel on Multi-District Litigation.

[2] The Excluded Entities are identified or referred to in Paragraph 13 of the Settlement and Exhibit 1 thereto.

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ

115743

2

Despite these difficulties, Class Counsel have negotiated a $51 million settlement from Crompton which was fully funded by October 16, 2006. Settlement Agreement, ¶¶28-29. This amount equals approximately ten percent (10%) of Defendants' Rubber Chemicals direct sales to the Class in the United States during the Class Period. Bennett Declaration, ¶3. As detailed below, the Settlement is greater, as a percentage of sales, than those approved in most other antitrust cases. Further, under the Settlement, Crompton may not terminate or modify the Settlement or the Settlement Amount due to requests for exclusion from the Class. Settlement Agreement, ¶37. Moreover, recoveries by Class Members, after payment of attorneys' fees and expenses, should equal more than 20% of the amount spent by Class Members in their direct purchases of Rubber Chemicals from Defendants in the United States during the Class Period. Bennett Declaration, ¶4.

The reasonableness of the fee is also supported by controlling case law. Viewed on a percentage basis, the requested fee equals the 25% Ninth Circuit benchmark, *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989), and compares very favorably with fee awards in analogous antitrust cases. *See, e.g., In re Remeron Direct Purchaser Antitrust Litig.,* 2005 WL 3008808, *17 (D. N.J. Nov. 9, 2005) (awarding fee of 33-1/3% of a $75 million settlement); *In re Linerboard Antitrust Litig.,* 2004 WL 1221350, *19 (E.D. Pa. June 2, 2004) (awarding fee of 30% of $202 million settlement).

In assessing an attorneys' fee request, the risks faced by the plaintiffs and their counsel should also be considered. Here, Class Counsel undertook to vigorously prosecute this case with no guarantee that they would ever be compensated for the significant time, money and effort that they invested. For example, they drafted two consolidated complaints, conducted an extensive factual investigation, interviewed witnesses, reviewed and analyzed over 1.5 million pages of documents, conducted or participated in over thirty (30) depositions, engaged in extensive discovery, successfully sought and obtained class certification, and engaged in hard-fought and protracted settlement negotiations. They performed this and other work in the face of significant litigation risks, including the risks associated with overcoming Crompton's defenses and establishing antitrust impact and damages at trial during the entire Class Period.

115743

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ

3

Finally, the requested fee has the unanimous support of the Class. The fee request was fully described in the Settlement Notice that was sent to more than 2,300 Class Members. Declaration of Lisa Poncia ("Poncia Declaration"), ¶¶3-4. *Not a single objection to the fee request has been received.* The absence of any objections is especially significant where, as here, the Class is largely comprised of large, sophisticated business entities. "When a class is comprised of sophisticated business entities that can be expected to oppose any request for attorney fees they find unreasonable, the lack of objections 'indicates the appropriateness of the [fee] request.'" *Remeron*, 2005 WL 3008808, *13 n.1 (citation omitted).

Accordingly, for these reasons, as well as those discussed below, Plaintiffs' Motion For An Award of Attorneys' Fees and Reimbursement of Expenses should be granted.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Overview Of The Litigation[3]

The first action in this litigation was filed on April 8, 2003. Thereafter, six other class action cases were filed. On September 16, 2003, the Court consolidated the actions under the caption *In re Rubber Chemicals Antitrust Litigation.* On November 3, 2003, Class Plaintiffs filed their First Amended Consolidated Complaint. On March 18, 2005, Plaintiffs filed their Second Amended Consolidated Complaint ("Complaint").

The Complaint alleges that during the period May 1, 1995 through December 31, 2001 (the "Class Period"), Akzo Nobel Chemicals International B.V., Akzo Nobel Chemicals, Inc., Flexsys N.V., Flexsys America L.P., Bayer AG, Bayer Corporation, Rhein Chemie Rheinau GmbH, Rhein Chemie Corporation, Crompton Corporation (now known as Chemtura Corporation) and Uniroyal Chemical Company, Inc. (now known as Chemtura USA Corporation) unlawfully combined and conspired to artificially raise, fix, maintain and stabilize

---

[3] A detailed history of much of the litigation is provided in the Declaration Of Steven O. Sidener In Support Of Plaintiffs' Motion For An Final Approval Of Settlement With The Bayer Defendants and The Plan Of Allocation and For An Interim Award Of Attorneys' Fees and Reimbursement Of Expenses ("Sidener Declaration"), previously filed with the Court on August 31, 2006, Dkt. #395. The Sidener Declaration is hereby incorporated by reference.

115743

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ                                                      4

the price of, and/or allocate markets and/or customers for, Rubber Chemicals sold in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

On September 17, 2004, Class Plaintiffs filed their motion for class certification. The hearing on that motion was held on September 20, 2005. On September 23, 2005, the Court issued its Order certifying the class. *See In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005). The class consisted of "all persons (excluding government entities, defendants, and the present or former parents, predecessors, subsidiaries and affiliates of the foregoing) which purchased Rubber Chemicals in the United States directly from any of the defendants, or any present or former parent, subsidiary or affiliate thereof, at any time during the period May 1, 1995 through December 31, 2001." *Id.* at 355.

Merits discovery began on July 18, 2005. Crompton's document production continued on a rolling basis through March 2006. All together, defendants produced over 1.5 million pages of documents. The documents originated from around the world, and many were in foreign languages. All of the documents were extensively analyzed, reviewed and indexed. Plaintiffs also conducted or participated in over thirty (30) depositions and retained experts to prepare this action for trial.

**B.     The Crompton Settlement Negotiations**

The negotiations of the Crompton Settlement were complex and lengthy. They occurred sporadically over the course of approximately twenty-seven (27) months, from July 2004 to October 2006. The Settlement followed an extensive investigation of the facts and the applicable law, and was reached after one fully documented and noticed settlement was terminated by Crompton due to excessive opt-outs. The protracted negotiations addressed issues such as the extent or scope of Crompton's liability, the impact on the Class, the amount of provable damages and the treatment of potential opt-outs. Each of these issues was thoroughly discussed and/or negotiated among counsel, all of whom have significant experience litigating antitrust class actions.

The Settlement requires Crompton to pay $51 million for the benefit of the Class. Crompton deposited the full amount of the Settlement into escrow in October 2006. The

1    Settlement contains other favorable features negotiated by Class Counsel, including a provision

2    that Crompton may not terminate or modify the settlement or the settlement amount due to

3    requests for exclusion from the Class.

4        The Court granted preliminary approval of the Settlement with Crompton on October 25,

5    2006. Pursuant to the preliminary approval order, Class Counsel mailed and published notices of

6    the Settlement and the January 9, 2007 fairness hearing. The notices stated that Class Counsel

7    would seek attorneys' fees of 25% of the Settlement Fund and reimbursement of up to $200,000

8    in expenses which might include payments to the Class Representatives of up to $10,000 each.

9    *No objections* to the requested attorneys' fees or expenses have been received.

10 **III.    ARGUMENT**

11       **A.    A Fee Award Is Warranted**

12        The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers

13    a common fund for the benefit of persons other than himself or his client is entitled to a

14    reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472,

15    478 (1980). Here, Class Counsel have obtained, among other things, a cash Settlement Fund of

16    $51,000,000 for the benefit of the Class. The settlement resulted from over 3½ years of vigorous

17    litigation. Class Counsel are making this motion for a fee award based on the recovery obtained

18    from Crompton.

19        Once the Court enters a final judgment pursuant to Rule 54(b) approving the Crompton

20    settlement, the claims against Crompton will be dismissed forever with prejudice. Further, the

21    class actions in this MDL proceeding will have been finally resolved and concluded. As such, an

22    award of fees and expenses is appropriate at this time.

23       **B.    A 25% Fee Award Is Fair And Appropriate**

24        For their efforts in recovering $51 million from Crompton, Class Counsel are seeking an

25    award of attorneys' fees in the amount of 25% of the Settlement Fund. The Settlement confers

26    significant benefits on the Class.

27        From the outset, Class Counsel undertook to litigate this action vigorously and skillfully,

28    with an eye toward maximizing any recovery for the benefit of the Class. They assumed

1 numerous litigation risks and secured a significant cash recovery from Crompton, whose

2 defenses might have mitigated its liability and obligation to pay significant damages. As this

3 Court noted in its Order certifying a class:

> Gold Bennett and Cohen Milstein, Co-Chairs of the Plaintiffs'
> Executive Committee, have worked together to identify,
> investigate, and prosecute the claims alleged here. They have
> reviewed documents produced in discovery, worked with
> economists to analyze impact and damage methodologies, analyzed
> comprehensive transactional data, briefed legal issues, and engaged
> in negotiations with opposing counsel. Gold Bennett and Cohen
> Milstein have also devoted considerable attorney resources to this
> case and have associated with other counsel, experienced in class
> actions, who have assisted in the matter as members of the
> Plaintiffs' Executive Committee.

10 *In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 355 (N.D. Cal. 2005). For their efforts,

11 Class Counsel should be compensated.

12     The Supreme Court has repeatedly recognized the importance of private antitrust

13 litigation in the effective enforcement of the antitrust laws. *See, e.g. Pillsbury Co. v. Conboy*,

14 459 U.S. 248, 262-63 (1983); *Reitner v. Sonotone Corp.*, 442 U.S. 330, 343 (1979); *Hawaii v.*

15 *Standard Oil Co.*, 405 U.S. 251, 265-66 (1972); *Fortner Enterp., Inc. v. U.S. Steel Corp.*, 394

16 U.S. 495, 502 (1969); *Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.*, 381

17 U.S. 311, 318 (1965) ("Congress has expressed its belief that private antitrust litigation is one of

18 the surest weapons for effective enforcement of the antitrust laws."). As noted in *Alpine*

19 *Pharmacy v. Chas. Pfizer & Co., Inc.*, 481 F.2d 1045, 1050 (2d Cir. 1973), "[i]n the absence of

20 adequate attorneys' fee awards, many antitrust actions would not be commenced . . ."

21     In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court affirmed that

22 under the "common fund doctrine" a reasonable fee may be based "on a percentage of the fund

23 bestowed on the class." Similarly, the Ninth Circuit has also repeatedly endorsed the use of the

24 percentage method in common fund cases.[4] *Paul, Johnson*, 886 F.2d 268; *Six Mexican Workers*

25

---

26     [4] Compensating counsel on a percentage basis also eliminates possible conflicts between

27 plaintiffs' counsel and class members. It aligns the lawyers' interest in being paid a fair fee with the interests of class members in achieving the maximum possible recovery in the shortest

28 amount of time. It provides a disincentive for plaintiffs' counsel to perform unnecessary work
(continued...)

v. *Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993). The Ninth Circuit has also established 25% of the fund recovered as the "benchmark" for fee awards in common fund cases. *Paul, Johnson*, 886 F.2d at 272. Here, a number of factors demonstrate why a 25% fee award is fair and reasonable.

### 1. The Result Achieved

The result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client"); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

Class Counsel have recovered $51 million from Crompton. This equals approximately ten percent (10%) of Defendants' Rubber Chemicals sales to the Class during the Class Period. Bennett Declaration, ¶3. It is an extraordinary result – one that far exceeds recoveries obtained in many other antitrust cases. *See, e.g., In re Automotive Refinishing Paint Antitrust Litig.*, 2004 WL 1068807, *2 (E.D. Pa. May 11, 2004) (recovery represented approximately 2% of sales); *Linerboard*, 321 F. Supp. 2d at 627 (recovery represented 1.62% of sales); *In re Plastic Tableware Antitrust Litig.*, 1995 WL 678663, *1 (E.D. Pa. Oct. 25, 1995) (recovery represented 3.5% of sales); *Fisher Bros. v. Phelps Dodge Industries, Inc.*, 604 F. Supp. 446, 451 (E.D. Pa. 1985) (recovery represented 2.4% of sales). Moreover, the recoveries secured by Class Counsel for the Class by all settlements in this case, after the payment of fees and expenses, will be more

---

[4](...continued)
just to maximize attorneys' fees. Moreover, the percentage approach is consistent with the practice in the private marketplace whereby contingent fee attorneys are customarily compensated by a percentage of the recovery (usually 30-40% of the amount recovered). *See In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, *7 (S.D. Cal. 1990).

than 20% of the amount spent by the Class on their direct purchases of Rubber Chemicals in the United States throughout the entire Class Period. *Id.* at ¶4.

Further, the Settlement Agreement contains a provision that Crompton may not terminate or modify the Settlement or the Settlement Amount due to requests for exclusion from the Class.

### 2. The Work Performed By Class Counsel

Antitrust price-fixing conspiracy cases are notoriously complex and difficult to litigate. *See, e.g., Linerboard,* 2004 WL 1221350, *10 (antitrust class action "is arguably the most complex action to prosecute") (quotations omitted); *In re Cement and Concrete Antitrust Litig.,* 1981-1 Trade Cases (CCH) ¶63,892 (D. Ariz. 1981) (recognizing "complexity and uncertainty" of legal and factual issues in antitrust case); *In re Art Materials Antitrust Litig.,* 100 F.R.D. 367, 372 (N.D. Ohio 1983) ("plaintiffs would face a very complex, difficult and costly trial on the merits, pursuant to which success could not be guaranteed.").

From the very beginning, Class Counsel litigated this action vigorously and skillfully, with an eye toward maximizing any recovery. Among other things, they:

- drafted two consolidated complaints;
- conducted an extensive factual investigation;
- interviewed witnesses;
- reviewed and analyzed over 1.5 million pages of documents;
- conducted or participated in over thirty (30) depositions;
- engaged in extensive discovery, *e.g.,* serving over 600 requests for admission, serving several sets of interrogatories, and reaching agreement with Crompton regarding the admissibility of documents;
- successfully obtained class certification;
- engaged in three (3) separate difficult and protracted settlement negotiations; and
- otherwise completed all fact discovery necessary to commence trial.

The caliber of opposing counsel is also relevant in assessing the quality of Class Counsel's work. *See In re Equity Funding Corp. Sec. Litigation,* 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *King Resources,* 420 F. Supp. at 634; *Arenson v. Board of Trade,* 372 F. Supp. 1349,

115743

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ                9

1354 (N.D. Ill. 1974). Class Counsel were opposed by skilled counsel with significant resources at their disposal. The principal defendant groups were represented by nation-wide law firms with recognized expertise: (1) O'Melveny & Myers (Crompton); (2) Jones Day (Bayer) and (3) Gibson Dunn & Crutcher (Flexsys). Despite facing such worthy adversaries, Class Counsel have obtained significant settlements – they represent a very large percentage of defendants' sales to Class Members. The quality of Class Counsel's work, and the efficiency and dedication with which it was performed, should thus be compensated. *See, e.g., J. N. Futia Co. v. Phelps Dodge Industries, Inc.*, 1982 WL 1892 (S.D.N.Y. Sept. 17, 1982).

### 3. <u>The Contingent Nature Of The Case</u>

A fair fee award should reflect the risks undertaken by Class Counsel by litigating an action on a contingent fee basis, with no assurance that they would ever receive attorneys' fees or the reimbursement of expenses. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049-50 (9th Cir. 2002) (approving an award of 28% of the recovery). As one commentator has noted:

> [C]ourts have been careful to award a fully compensable reasonable fee based on the underlying economic inducement for class action lawyers to pursue potentially expensive or complex common fund class litigation. These lawyers assume the risk of no compensation unless they successfully confer common fund benefits on the class, based on their reasonable expectation that they will share in the recovery in a fair proportion, in contrast to receiving a fee based initially on time-expended criteria that fail to give the *results obtained* factor primary consideration.

1 Alba Conte, *Attorney Fee Awards* §1.09 at 16 (2d Ed. 1993) (footnote omitted) (emphasis in original). Fee awards must be sufficient to encourage the most skilled and determined counsel to take on difficult cases and see them through to completion, which could take years. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 2003 WL 2203774, *7 (D.D.C. June 16, 2003).

This action was not one in which a recovery – let alone a substantial recovery – was assured. From the outset, Class Counsel understood that they would be involved in complex, expensive, and lengthy litigation. There was no guarantee that they would be compensated for the significant time, money, and effort that they invested to prosecute the case against Crompton to a successful conclusion. Class Counsel were obligated to commit sufficient staffing and funding for the case, both of which were very considerable. There was also a real risk that,

despite the best efforts of Class Counsel, a significant recovery from Crompton might not be obtained. At the hearing on final approval of the Flexsys settlement, this Court noted that Plaintiffs bore the risk of establishing, among other things, antitrust impact and damages. June 21, 2005 Transcript of Hearing, at 14.

To establish a price-fixing violation, a plaintiff must demonstrate not only that a conspiracy existed, but also that the conspiracy caused: (a) an antitrust impact; and (b) damages measurable by reference to prices that would have existed "but for" the conspiracy. Moreover, even if Plaintiffs successfully navigated through pre-trial proceedings and obtained a jury verdict, they still faced the prospect of having their judgment overturned on appeal. *See e.g., Anixter v. Home-Stake Prod. Co.,* 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Backman v. Polaroid Corp.,* 910 F.2d 10 (1st Cir. 1990) (*en banc*) (reversing plaintiffs' verdict and ordering entry of judgment for defendants); *Ward v. Succession of Freeman,* 854 F.2d 780 (5th Cir. 1988) (reversing plaintiffs' jury verdict).

Despite these risks, Class Counsel committed themselves to this litigation and obtained a substantial settlement. For this, they should be fairly compensated.

### 4. Percentages Awarded In Other Cases

In *Vizcaino,* 290 F.3d 1043, the Ninth Circuit surveyed fee awards from almost three dozen large, common fund settlements, including many in which fees of 20-30% have been awarded. *Id.* at 250. Based on this analysis, the court affirmed the district court's award of a 28% fee as being "reasonable under the percentage method." 290 F. 3d at 1050; *see also Fischel v. Equitable Life Assur. Society of U.S.,* 307 F.3d 997, 1009 (9th Cir. 2002) (noting the 25% "benchmark" and favorably citing to the Federal Judicial Center's report of a mean rate of 27% and a median rate of 29% for class settlements approved in district courts in Northern California from 1992 to 1994); *In re Pacific Enterprises Secs. Litig.,* 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five percent is the 'benchmark' that district courts should award in common fund cases."); *Shaw v. Toshiba America Information Systems, Inc.,* 91 F. Supp. 2d 942, 972 (E.D. Tex. 2000) ("[B]ased on the opinions of other courts and the available studies of class action attorneys' fee awards . . . this Court concludes that attorneys' fees in the range from twenty-five

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ

115743

11

1 percent (25%) to thirty-three and thirty-four one-hundredths percent (33.34%) have been

2 routinely awarded in class actions."); Thomas E. Willging, et al., *Empirical Study of Class*

3 *Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules,*

4 at 69 (Federal Judicial Center 1996) (1996 study found that the median percentage for attorneys'

5 fees "ranged from 27% to 30%").

6      The requested fee of 25% also compares favorably with fees awarded in other large

7 antitrust cases. *See, e.g., Remeron*, 2005 WL 3008808, *17 (awarding 33-1/3% of a $75 million

8 settlement fund as fees); *Linerboard*, 2004 WL 1221350, *19 (30% of $202 million settlement);

9 *In re Vitamins Antitrust Litig.*, 2001 WL 34312839, *14 (D.D.C. July 16, 2001) (34.6% of $365

10 million settlement); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403 (S.D. Tex. 1999) (25% of

11 $190 million settlement).[5]

12      The customary fees paid in contingent fee non-class actions are also relevant to this

13 analysis. *See Remeron*, 2005 WL 3008808, *16 ("The percentage-of-the-fund method of

14 awarding attorneys' fees in class actions should approximate the fee which would be negotiated

15 if the lawyer were offering his or her services in the private marketplace."). Such cases usually

16 provide for fees equal to 30-40% of the recovery. *Blum*, 465 U.S. at 903 n. 20 (Brennan, J.,

17 concurring in part and dissenting in part) ("In tort suits, an attorney might receive one-third of

18 whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional

19 to the recovery."); *In re M.D.C. Holdings Secs. Litig.*, 1990 WL 454747, *7 (S.D. Cal. 1990) ("In

20 private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the

21 total recovery."); *Phemister v. Harcourt Brace Jovanovich, Inc.*, 1984 WL 21981, *15 (N.D. Ill.

23     [5] In *Remeron*, 2005 WL 3008808, *16, the Court listed several recent antitrust cases

24 involving pharmaceutical products where fees of 30% or more were awarded: *In re Relafen Antitrust Litig.*, No. 01-12239-WGY (D. Mass. April 9, 2004) (awarding 33% fee on a $175

25 million settlement); *In re Buspirone Antitrust Litig.*, No. 01-CV-7951 (JGK) (S.D.N.Y. April 1, 2003) (awarding a 33% fee on a $220 million settlement); *North Shore Hematology-Oncology*

26 *Associates, P.C. v. Bristol Myers Squibb Co.*, No. 1:04cv248 (EGS) (D.D.C. Nov. 30, 2004)

27 (awarding a 33% fee on a $50 million settlement); *In re Terazosin Hydrocholride Antitrust Litig.*, No. 99-MDL-1317 (S.D.Fla. Apr. 19, 2005); (awarding a 33% fee on a $72.5 million settlement);

28 and *In re Cardizem CD Antitrust Litig.*, No. 99-73259 (E.D. Mich. Nov. 26, 2002) (awarding a 30% fee on a $110 million settlement).

115743

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ     12

Sept. 14, 1984) ("Contingent fee arrangements in non-class action damage lawsuits use the simple method of paying the attorney a percentage of what is recovered for the client. The more the recovery, the more the fee. The percentages agreed on vary, with one-third being particularly common."); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (40% contractual award if case went to trial); *Alpine Pharmacy*, 481 F.2d at 1051 (32% fee for settlement before trial); *McKenzie Constr., Inc. v. Maynard*, 823 F.2d 43 (3d Cir. 1987) (33-1/3% contingent fee held reasonable); *In re Ikon Office Solutions, Inc. Secs. Litig.*, 194 F.R.D. 166, 194-97 (E.D. Pa. 2000) ("in private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery"); *In re Shell Oil Refinery*, 155 F.R.D. 552, 571 (E.D. La. 1993) ("The customary contingency fee is between 33-1/3% and 40%.").

Here, Class Counsel request 25% of the Settlement, an amount that is supported by the Ninth Circuit's 25% benchmark and other relevant case authority. The requested fee, therefore, is fair and reasonable.

### 5.    The Skill and Efficiency of Plaintiffs' Counsel

The expertise of Class Counsel is also an important consideration. Class Counsel include some of the most experienced antitrust firms in the country with decades of experience in prosecuting and trying complex actions. *See In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 355 (N.D. Cal. 2005) (observing that Class Counsel have extensive experience and expertise in antitrust and other class actions, as well as other complex litigation). The Settlement is a reflection of their skill and experience. *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa.2000) (awarding 30% fee and stating, "the most significant factor in this case is the quality of representation, as measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel").

//

//

115743

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ                                    13

### 6. No Objections

Finally, the reasonableness of the fee award is confirmed by the *absence* of objections. *See In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 514 (W.D. Pa. 2003) ( "the absence of substantial objections by other class members to the fee application supports the reasonableness of Lead Counsel's request"). Over 2,300 notices of the Settlement were sent to the potential members of the Class. Poncia Declaration, at ¶¶3-4. The Settlement Notice contained a full description of the fees and expenses being requested by Class Counsel. *Not a single objection to the requested fees or expenses was received.*

Moreover, when a class consists of sophisticated business entities that can be expected to oppose an unreasonable fee request, the lack of objections "indicates the appropriateness of the [fee] request." *Cimarron Pipeline Construction, Inc. v. Nat'l Council on Compensation Ins.*, 1993 WL 355466, *1-2 (W.D. Ok. June 8, 1993); *In re Sequoia Systems, Inc. Sec. Litig.*, 1993 WL 616694, *1 (D. Mass. Sept. 10, 1993) (finding "influential" the fact that no class member objected to the fee request of one-third). The absence of objections, thus, strongly favors the granting of Class Counsel's fee request.

### C. Reimbursement Of Expenses Is Appropriate

#### 1. Litigation Expenses

Class Counsel are also entitled to the reimbursement of reasonable litigation expenses from the Settlement Fund. *Lorazepam*, 2003 WL 2203774, *305; *In re Travel Agents Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997); *In re Catfish Antitrust Litig.*, 939 F. Supp. 493, 503 (N.D. Miss. 1996); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 534 (E.D. Pa. 1990); *In re General Public Util. Sec. Litig.*, [1983-84 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶99,566 at 97,234 (D.N.J. 1983); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("*Harris* may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'").

//

//

//

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ

115743

14

Class Counsel have incurred unreimbursed litigation expenses of $39,208.35. *See* Bennett Declaration, ¶8. These expenses were necessary to litigate this action and included the cost for computer research, photocopies, expert fees, travel expenses, and other typical litigation expenses. The expenses represent those that would ordinarily be billed to a client.

Accordingly, Class Counsel should be reimbursed for the unreimbursed expenses that they have reasonably incurred in successfully prosecuting this action.

## 2. **Payments To The Class Representatives**

Class Counsel also request that each named plaintiff, Rubber Engineering and Development Company; Standard Rubber Products, Inc.; Polymerics, Inc.; Schlegel Corporation; Industrial Rubber Products LLC; Precision Associates, Inc.; and Monmouth Rubber & Plastics Corporation, receive a payment of $10,000 for their time, effort and expense on behalf of the Class.

Courts often make an award to class representatives and named plaintiffs for their efforts in pursuing litigation on behalf of the class. As the Supreme Court has recognized: "Congress has encouraged private antitrust litigation not merely to compensate those who have been directly injured but also to vindicate the important public interest in free competition." *Fortner*, 349 U.S. at 502; *see also Hawaii*, 405 U.S. at 262 (importance of private enforcement of antitrust laws.) Courts have acknowledged the public benefits of private enforcement efforts in antitrust and similar types of litigation by rewarding representative plaintiffs who have been instrumental in obtaining relief on behalf of persons other than themselves. *Catfish*, 939 F. Supp. at 503-4 (citing cases); *see also Diamond v. Fogelman*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,980 at 94,245 (E.D.N.Y. July 30, 1992); *Malanka v. de Castro*, [1991-91 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,657 at 98,080 (D. Mass. Nov. 20, 1980); *SmithKline Beckman*, 751 F. Supp. at 535; *Sherin v. Smith*, [1987-1988 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶93,582 at 97,609 (E.D. Pa. Oct. 22, 1987); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985) (approving award of $20,000 to each of the named plaintiffs in actions filed pursuant to federal antitrust laws).

//

115743

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ

15

1    By shouldering the burdens associated with this litigation as class representatives, each

2 Plaintiff has made a significant contribution to the private enforcement of the antitrust laws. The

3 Plaintiffs played an important role in this litigation – retaining counsel, producing documents,

4 responding to written discovery, providing witnesses for depositions, and conferring with counsel

5 on the litigation. In light of the benefits conferred by the settlements reached in this case, the role

6 of the Plaintiffs in this lawsuit should be acknowledged with a modest payment to compensate

7 them for their time and expenses associated with actively participating in the litigation. Courts in

8 this and other Circuits have long recognized that reasonable awards are appropriate given the

9 extra effort and initiative that named plaintiffs expend and the added risks and burdens they face

10 as compared to unnamed and absent class members.[6] Accordingly, such an award is justified

11 here.

12    In addition, Class Members were informed in the Class Notice that the Court may be

13 asked to approve an award to the Plaintiffs of up to $10,000 each from the settlement fund. No

14 Class Member has objected to the proposed awards.

15 //

16 //

17 //

18 //

19 //

20 //

21 //

22 //

23

24    [6] *See, e.g. In re Mego Financial Corp. Securities Litig.*, 213 F.3d 454, 463 (9th Cir.
2000); *In re Sorbates Direct Purchaser Antitrust Litig.*, Nos. 98-4886, 99-1358, 99-1499, 99-
25 2145, 99-3854, 99-4254, 99-4473, 2002 WL 31655191, at *3 (N.D. Cal. Nov. 15, 2002); *Hughes
v. Microsoft Corp.*, No. C98-1646C, C93-0178C, 2110 WL 34089697, at *12 (W.D. Wash. Mar.
26 26, 2001) ("Incentive awards compensate named plaintiffs for the services they provided and the
risks they incurred during the course of the class litigation."); *Weddle v. Frito-Lay, Inc.*, No. C-
27 99-05272, 2001 WL 182374, at *3 (N.D. Cal. Feb. 21, 2001); *Presley v. Carter Hawley Hale
Profit Sharing Plan*, No. C9704316, 2000 WL 16437, at *2 (N.D. Cal. Jan. 7, 2000); *Van
28 Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995).

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM IN
SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ                                                    16

115743

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request the Court to award Class Counsel attorneys' fees and reimbursement of expenses, including interest thereon, and authorize an award to the class representatives for their time and expenses in representing the Class throughout this litigation.

A proposed form of Order is submitted herewith.

Dated: December 21, 2006

GOLD BENNETT CERA & SIDENER LLP

By: _____
            Paul F. Bennett

COHEN MILSTEIN HAUSFELD
& TOLL, PLLC

Co-Chairs of Plaintiffs' Executive Committee

PLF'S MTN FOR AN AWARD OF ATTYS' FEES AND REIMBURSEMENT OF EXPENSES: MEMORANDUM IN SUPPORT THEREOF - MDL Docket No. C-04-1648 MJJ

115743

17