UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: RUBBER CHEMICALS ANTITRUST LITIGATION,<br><br>**This document relates to:**<br><br>   **C07-1057 MJJ (BZ)** | No. C04-1648 MJJ (BZ)<br>      (Lead Case)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY** |

May plaintiff discover communications between a defendant's affiliate and the European Commission that were made pursuant to the Commission's Leniency Program?  Based on the particular facts of this case, I conclude it may not and **DENY** plaintiff's motion to compel.

In 2002, attorneys representing defendant Flexsys N.V. met with officials of the European Commission.  Flexsys N.V. disclosed the existence of anti-competitive practices in the rubber chemicals industry and solicited immunity from fines for Flexsys N.V. pursuant to the Commission's Leniency

1

Program.[1]  Decision of the European Commission dated December 21, 2005 attached as Exhibit D to the Forman Supplemental Declaration filed February 12, 2007 (hereafter "Decision") ¶ 46.  Over the next three years the Commission, through its Directorate-General for Competition ("DG-Competition") carried out an extensive investigation during which there were communications between the Commission and its counsel and Flexsys N.V. and its counsel.  At the conclusion of its investigation, the Commission issued its 106-page Decision containing highly detailed findings of fact based on specific evidence, including evidence that was submitted by Flexsys N.V.

In 2006, Plaintiff Korea Kumho Petrochemical Co., Ltd. ("Kumho"), filed this complaint against defendant Flexsys America L.P. ("Flexsys"), its affiliate Flexsys N.V., and others, alleging that defendants engaged in unlawful conduct to exclude Kumho from the U.S. rubber chemicals market.  Kumho then served Flexsys, but not Flexsys N.V., with requests for documents related to investigations of suspected antitrust violations in the rubber chemicals industry that were conducted by the governments of the United States, Canada, and the European Union.

Flexsys objected to the requests on various grounds.  Over the ensuing months, the parties resolved many of the objections.  Flexsys produced documents with respect to the

---

[1] "The European Commission's 'Leniency Program' allows 'cartel participants [to] confess their wrongdoing' in return for prosecutorial leniency."  Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 266 n.18 (2004).

1   U.S. and Canadian investigations and produced all the business
2   documents that had been produced in Europe.  Flexsys refuses
3   to produce the communications between the Commission and
4   Flexsys N.V. which were generated under the Leniency Program
5   (hereafter collectively referred to as the EC documents).
6   Flexsys objects on the principal ground that production would
7   conflict with the policies of a foreign sovereign, which is
8   entitled to comity.  Flexsys has submitted a letter from the
9   Commission opposing discovery of the EC documents.[2]
10       The Federal Rules of Civil Procedure authorize party-
11  initiated discovery of any evidence that is relevant to any
12  party's claims or defenses.  Fed. R. Civ. P. 26(b)(1).
13  However, Rule 26 grants the court discretion to limit
14  discovery on several grounds, including international comity.
15  See Societe Nationale Industrielle Aeropostiale v. U.S. Dist.

---

[2] The Commission feels so strongly about this issue that it has filed briefs amicus curiae in two other cases in which similar issues have arisen.  In In re Methionine Antitrust Litig., MDL No. 00-1311 CRB (N.D. Cal. June 17, 2002), Judge Breyer affirmed a special master's report which denied plaintiff's motion to compel.  The special master, a retired former judge of this court, had conducted a comity analysis and concluded that "the balance tips strongly in favor of" respecting the Commission's interests, largely because, as here, the documents at issue were not seen as that important and alternative sources for the information existed.  Order on Plaintiff's Motion to Compel at 13.  In In re Vitamins Antitrust Litig., 2002 U.S. Dist. LEXIS 26490 (D.D.C. Jan. 23, 2002) and 25815 (Dec. 18, 2002), the court adopted a special master's report which recommended that the documents be produced after the master conducted a comity analysis.  While the master's report was sealed, in balancing the comity factors the court concluded that the information there sought did not all originate outside the U.S. and could not be obtained from other sources. The court also doubted that production of the documents would undermine important interests of the Commission based in part on expert testimony not offered in this case. 2002 U.S. Dist. LEXIS 26490 at *127-28.

1  Court for the S. Dist. of Iowa, 482 U.S. 522, 544 (1987).
2  American courts, in supervising pretrial proceedings, should
3  exercise special vigilance to demonstrate due respect for any
4  sovereign interest expressed by a foreign state.
5  Aeropostiale, 482 U.S. at 546.
6        "Comity, in the legal sense, is neither a matter of
7  absolute obligation, on the one hand, nor of mere courtesy and
8  good will, upon the other." Aeropostiale, 482 U.S. at 544
9  (citing Hilton v. Guyot, 159 U.S. 113, 163-64 (1895)).  It is
10 the recognition which one nation allows within its territory
11 to the legislative, executive, or judicial acts of another
12 nation, having due regard both to international duty and
13 convenience, and to the rights of its own citizens or of other
14 persons who are under the protection of its laws." Id.
15       As a threshold matter, Kumho doubts the position the
16 Commission has taken in this case is even entitled to comity.
17 It first questions whether the European Union is a sovereign
18 entity.  As the Supreme Court recognized in Intel v. Advanced
19 Micro Devices, Inc., 542 U.S. 241 (2004), "'The European
20 Commission is the executive and administrative organ of the
21 European communities'... The Commission exercises
22 responsibility over the wide range of subject areas covered by
23 the European Union Treaty; those areas include the treaty
24 provisions, and regulations thereunder, governing
25 competition." Id. at 250.  While the Supreme Court did not
26 expressly hold that the European Union is a sovereign who
27 should be accorded comity, the analysis it conducted in
28 concluding that the European Commission is a tribunal within

4

the meaning of 28 U.S.C. §1782(a) is in significant part a comity analysis.  Id. at 261-62.  Nothing in the Supreme Court's opinion suggests that the European Union should not be treated as a sovereign.  Kumho has cited no authority in support of its position and the only authority of which I am aware accords the European Union comity.[3]

Kumho next questions whether the letter directed to the court and signed by Kirtikumar Mehta, Director of DG-Competition, accurately states the views of the Commission.  Once again, the Supreme Court has recognized that "DG-Competition, operating under the Commission's aegis, is the European Union's primary antitrust law enforcer." Intel Corp. v. Advanced Microdevices, Inc., 524 U.S. at 250.  Far from being a mere "bureaucrat," as Kumho has characterized him, Mr. Mehta seems analogous to the head of the Justice Department's Antitrust Division.  His letter states that it "reflects the views of D.G. Competition" and that the Commission will seek leave to act as amicus curiae if desired.  Moreover, he has attached to his letter a position paper filed by the Commission with the United States Antitrust Modernization Commission which amplifies the Commission's views.  Under these circumstances I conclude that the views expressed in Mr. Mehta's letter and its attachment are the views of the Commission.

---

[3] See Empagaran S.A. v. Hoffman-LaRoche Ltd., 453 F. Supp. 2d 1 (D.D.C. 2006). See also Methionine, MDL No. 00-1311 CRB (N.D. Cal. June 7, 2002), and Vitamins, 2002 U.S. Dist. LEXIS 25815 at *33 ("the concerns of the EC should be addressed out of respect for the EC as a foreign Sovereign").

5

1      In undertaking a comity analysis, a court must balance
2 five competing factors:

> "(1) the importance to the ... litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located."

Aeropostiale, 482 U.S. at 544 (citing Restatement (Third) of the Foreign Relations Law of the U.S. § 442 (1987)). Applying this analysis, I conclude that principles of comity outweigh the need for production of the EC documents.

     First, courts are less inclined to ignore a foreign state's concerns where the outcome of litigation "does not stand or fall on the present discovery order," or where the evidence sought is cumulative of existing evidence. See Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1475 (9th Cir. 1992). Here, plaintiff has failed to persuade me of the importance of the EC documents. Plaintiff asserts that they are "highly relevant" to its claim, in that Flexsys N.V. admitted its participation in one or more conspiracies to restrain trade. (See Memorandum in Support of Motion to Compel at 5). However, the Commission was investigating whether Flexsys N.V. had entered into a conspiracy to restrain trade and monopolize in Europe. It is not clear how relevant or important any admissions Flexsys N.V. made while seeking leniency from the Commission would be in this case in which plaintiff claims that Flexsys engaged in a conspiracy to

6

1  exclude plaintiff from the U.S. rubber chemicals market.  It
2  is even less clear for documents generated by the Commission.
3      Flexsys has already produced all the business records
4  Flexsys N.V. turned over to the Commission.  It also produced
5  documents relating to the investigation by the U.S. Department
6  of Justice ("DOJ"), including all documents relating to any
7  actual or proposed amnesty, agreement, or plea.  Thus, I fail
8  to see the importance or relevance of the EC documents to this
9  litigation in which plaintiff claims that Flexsys sought to
10 exclude it from the U.S. market, not the European market, and
11 plaintiff already has the documents relating to the DOJ
12 investigation of a conspiracy in the U.S.[4]  This factor weighs
13 against production.
14     As to the specificity of the request, generalized
15 searches for information whose disclosure is prohibited under
16 foreign law are discouraged.  <u>Richmark Corp.</u>, 959 F.2d at
17 1475.  Flexsys has not objected on these grounds, and the
18 request for the EC documents seems sufficiently specific.
19 This factor favors production.
20     As to the third factor, the EC documents did not
21 originate in the United States.  According to Flexsys, they
22 were prepared by European counsel for Flexsys N.V. and by
23 officials of the Commission, which sits in Belgium.  In its
24 letter the Commission states that the documents requested by

---

[4] In an abundance of caution, I reviewed the EC documents *in camera*.  My review confirmed their lack of importance to this litigation.  Specifically, I found no reference to Kumho or to any conduct aimed at excluding anyone from the U.S. market.

7

1  Kumho include confidential Commission documents that were
2  provided to the parties to allow them to exercise their rights
3  of defense in the Commission's proceedings.  (See Mehta Letter
4  dated April 17, 2007, at 2).  The fact that Flexsys has access
5  to these documents in the U.S. is not dispositive.  The
6  documents were created, transmitted, and used only in Europe
7  and in conjunction with the European enforcement proceedings.
8  This factor weighs against production.

9       The fourth factor in the comity analysis is whether the
10 information sought can be obtained through alternative means.
11 See Aeropostiale, 482 U.S. at 544.  If the information sought
12 can easily be obtained elsewhere, there is little or no reason
13 to offend foreign law.  Here, Flexsys has produced the
14 documents exchanged with the DOJ in the course of its
15 investigation, including any amnesty or plea agreement.  This
16 information is likely to be more relevant to Kumho that the EC
17 documents, since Kumho asserts that Flexsys conspired to keep
18 it out of the U.S. market and any admission made to DOJ likely
19 involves an admission of wrongdoing within the U.S.

20      In addition, Kumho admits that the Commission issued a
21 lengthy Decision detailing the entire alleged price-fixing
22 conspiracy "communication-by-communication"; an opinion that,
23 according to Kumho, "recites the entire file which was
24 provided to Flexsys"; an opinion to which Kumho has access and
25 has submitted to this Court. (Memorandum in Support of Motion
26 to Compel at 8-9).  Since Kumho's request is, in large part,
27 cumulative of information it already has, I find that the
28 available alternative means of obtaining the information Kumho

needs weighs against production.[5]

Finally, a court must determine the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. Aeropostiale, 482 U.S. at 544. This requires a balancing of comity with the underlying policies of the Federal Rules of Civil Procedure.

The Commission states that given the crucial investigative and evidentiary value of corporate statements and voluntary submissions, the protection of these documents is "indispensable to ensure the viability and efficacy of the Leniency Programme," which the Commission has described as the E.U.'s most effective tool in combating illegal cartels. (See Mehta Letter dated April 17, 2007, at 2). The Commission also states that "any response to a discovery request covering [the information sought by Kumho] would conflict with Flexsys' obligations under E.C. law." Id. Although this investigation is completed, the Commission argues that production of the EC documents would undermine its ability to initiate and prosecute future investigations by creating disincentives to cooperate with the Commission and would prejudice future investigations.

Taken as a whole, the Commission's letter is a strong objection to the production of the statements sought by Kumho,

---

[5] Disavowal by Flexsys N.V. in this litigation of the admissions it made in Europe might alter the analysis of this factor.

and raises some concerns that discovery of the EC documents could impact U.S. - E.U. cooperation in the enforcement of the antitrust laws.  It seems that any marginal benefit that the plaintiff would gain from disclosure is outweighed by the impact that disclosure will have on the Commission's interests in the effective enforcement of its competition laws and its cooperation with the U.S. to enforce those laws internationally, especially considering that the other factors substantially disfavor production.

In this case, a foreign entity has taken a clear position and articulated reasons why it believes production of the requested documents would harm its interests.  Comity is a sensitive balance, but having balanced the conflicting interests of comity and discovery, I find that in this case the principles of comity outweigh the policies underlying discovery.  It is therefore **ORDERED** that the Motion to Compel is **DENIED.**

Dated: May 9, 2007

_____
Bernard Zimmerman
United States Magistrate Judge

G:\BZALL\-REFS\RUBBER CHEMICALS\DenyMotCompelBZ3.wpd