**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: RUBBER CHEMICALS ANTITRUST LITIGATION _____/ | Master Docket No. C04-01648 MJJ<br>Case No. C06-05700 MJJ<br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** |

## INTRODUCTION

Before the Court are five motions to dismiss brought by Defendants Chemtura Corporation and Uniroyal Chemical Company (C 04-1648, Docket No. 433), Defendant Michael Duchesne (C 06-5700, Docket No. 71), Defendant Joseph B. Eisenberg (C 06-5700, Docket No. 65), Defendant Peter D. Welch (C 06-5700, Docket No. 77), and Defendant James J. Conway (C06-5700, Docket No. 90.)

For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** each of the Motions, as discussed below.

## FACTUAL BACKGROUND

Plaintiffs Bridgestone Americas Holding, Inc., Bridgestone Firestone North American Tire LLC, Bandag, Inc., and Pirelli LLC (collectively "Plaintiffs") originally filed this antitrust action against Defendants Chemtura Corporation and Uniroyal Chemical Company (collectively "Chemtura") on June 29, 2006 in the United States District Court for the Middle District of

Tennessee. (Docket No. 1) On September 19, 2006, the action was transferred to this district for coordination or consolidation with MDL proceedings already before this Court in *In Re Rubber Chemicals Antitrust Litigation*, Case No. C-04-1648 MJJ. (Docket No. 1.)

On September 22, 2006, Plaintiffs filed an Amended Complaint. (Docket No. 8.) Plaintiffs' Amended Complaint added four new individual defendants: Michael Duchesne, Joseph B. Eisenberg, Peter D. Welch, and James J. Conway. Plaintiffs' Amended Complaint also newly demanded damages for injuries allegedly suffered in foreign commerce under the Sherman and Clayton Acts, and pleaded that that the domestic-injury exception created by the Foreign Trade Antitrust Improvements Act ("FTAIA") applied. Generally, Plaintiffs allege that Defendants engaged in a conspiracy to fix prices for rubber chemicals in both domestic and foreign markets, and that Plaintiffs suffered injury by paying higher prices for rubber chemicals than they would have paid in the absence of the alleged conspiracy. Plaintiffs seek damages for alleged injuries beginning in 1993 and continuing into 2003. (Amended Complaint ¶¶ 1-2.) The named Plaintiffs seek damages not only on behalf of themselves, but on behalf of subsidiaries and affiliates of each named Plaintiff who purchased products from Chemtura in various locations around the world. (*Id.* ¶¶ 15-19.) Plaintiffs allege that these subsidiaries and affiliates have assigned any and all of their claims to the named Plaintiffs. (*Id.*)

Chemtura and the individual defendants now move to dismiss the bulk of Plaintiffs' Amended Complaint. Plaintiffs Bandag, Inc., and Pirelli LLC oppose the motion.[1]

## LEGAL STANDARD

**A.     Rule 12(b)(1).**

Rule 12(b)(1) authorizes a party to move to dismiss a claim for lack of subject matter jurisdiction. Federal courts are courts of limited jurisdiction; thus, the Court presumes lack of jurisdiction, and the party seeking to invoke the court's jurisdiction bears the burden of proving that subject matter jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377

---

[1] Plaintiffs Bridgestone Americas Holding, Inc. and Bridgestone Firestone North American Tire, LLC have reached a settlement in principle and have not filed an opposition to the motion. After the Motions to Dismiss were filed, the parties also stipulated to the dismissal with prejudice of the Second Cause of Action in the Amended Complaint, for violations of Tennessee state antitrust law, against all Defendants. (C 06-5700, Docket No. 119.)

(1994). A party challenging the court's jurisdiction under Rule 12(b)(1) may do so by raising either a facial attack or a factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A facial attack is one where "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In evaluating a facial attack to jurisdiction, the Court must accept the factual allegations in plaintiff's complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n. 1 (9th Cir. 2001). For a factual attack, in contrast, the Court may consider extrinsic evidence. *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987). Further, the court does not have to assume the truthfulness of the allegations, and may resolve any factual disputes. *See White*, 227 F.3d at 1242. Thus, "[o]nce the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or evidence properly before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

**B.     Rule 12(b)(6).**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Because the focus of a Rule 12(b)(6) motion is on the legal sufficiency, rather than the substantive merits of a claim, the Court ordinarily limits its review to the face of the complaint. *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Generally, dismissal is proper only when the plaintiff has failed to assert a cognizable legal theory or failed to allege sufficient facts under a cognizable legal theory. *See SmileCare Dental Group v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 782 (9th Cir. 1996); *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Sufficient facts, however, must suggest a right to relief that is more than merely conceivable, but plausible on its face. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). In considering a Rule 12(b)(6) motion, the Court accepts the plaintiff's material allegations in the complaint as true and

3

construes them in the light most favorable to the plaintiff. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

## ANALYSIS

### A.   Subject Matter Jurisdiction.

Defendants raise a facial Rule 12(b)(1) attack and contend that Plaintiff's foreign injuries must be dismissed under Rule 12(b)(1) because they are barred by § 6a of the Foreign Trade Antitrust Improvements Act ("FTAIA"). Defendants contend that Plaintiffs have not pled, and cannot plead, any facts establishing the "domestic-injury exception" created by § 6a.

The FTAIA sets forth a general rule that excludes from the scope of the Sherman Act all conduct involving non-import foreign commerce unless two conditions are met: (1) the alleged conduct has a "direct, substantial and reasonably foreseeable effect" on U.S. domestic commerce, and (2) that the domestic anti-competitive effect "gives rise to" a claim under the Sherman Act. Section 6a of the FTAIA provides, in relevant part, that:

> Sections 1 to 7 of [the Sherman Act] shall not apply to conduct involving trade or commerce (other than import trade or import commerce) with foreign nations unless–
>   (1) such conduct has a direct, substantial and reasonably foreseeable effect-
>     (A) on trade or commerce which is not trade or commerce with foreign nations, or on import trade or import commerce with foreign nations; or
>     (B) on export trade or export commerce with foreign nations, of a person engaged in such trade or commerce in the United States; and
>   (2) such effect gives rise to a claim under the provisions of sections 1 to 7 of this title, other than this section.

15 U.S.C. § 6a.

### 1.   The domestic injury exception of the FTAIA requires that the foreign injury be proximately caused by the domestic effects of the anti-competitive conduct.

The parties fundamentally disagree on the application of this domestic-injury exception to the case before this Court. Both sides agree that Plaintiffs' alleged injury includes, in part, injury suffered domestically by purchasing rubber chemicals in the domestic market at inflated prices. Both sides agree that this Court has subject matter jurisdiction to resolve such allegations. However, Defendants contend that, notwithstanding this Court's subject matter jurisdiction over that

"domestic" portion of Plaintiffs' claims, Section 6a of the FTAIA requires dismissal of Plaintiffs' claims of injury resulting from purchases in foreign markets to the extent Plaintiffs cannot establish a direct and proximate causal relationship between the domestic effect of the anti-competitive conduct and the purported foreign injury.  Plaintiffs disagree, arguing that the appropriate analysis under Section 6a of the FTAIA does not require such "claim-splitting" and that, if a proper plaintiff has a valid claim premised on anti-competitive conduct that arises even in part from the domestic effects of that conduct, that plaintiff can recover all damages resulting relating to the anti-competitive conduct, whether foreign or domestic, under the Sherman Act.

At first glance, Plaintiffs' proffered interpretation of Section 6a of the FTAIA is a plausible reading of the statute.  As Plaintiffs point out, Section 6a does not expressly speak in terms of excluding foreign injury or foreign damages from the jurisdiction of United States courts.  Instead, Section 6a speaks in terms of foreign "conduct", placing such conduct outside the reach of the Sherman Act unless that conduct both has a "direct, substantial and reasonably foreseeable effect" on domestic markets, and that domestic effect "gives rise to" a Sherman Act claim.  Plaintiffs argue that because there is no dispute that each Plaintiffs' claim arises, in part, directly from the charging of collusively-established prices in the United States, that is sufficient under Section 6a to place the entirety of Plaintiffs' claims within the purview of this Court.  Plaintiffs contend that nothing in Section 6a explicitly requires all aspects of a claim to arise directly from domestic effects, and that the statute is meant to bring foreign conduct within the reach of the Sherman Act so long as some anti-competitive effect of that conduct has been felt in the United States.

This Court, however, is not interpreting Section 6a in a vacuum, and must consider the gloss put on Section 6a by controlling precedent.  In *F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155 (2004) ("*Empagran I*"), the Supreme Court engaged in considerable analysis of the domestic-injury exception under the FTAIA.  In *Empagran I,* the Court considered whether the Sherman Act could reach "anticompetitive price-fixing activity that is in significant part foreign, that causes some domestic antitrust injury, and that independently causes separate foreign injury." *Id.* at 158.  The Court concluded that in such a situation, the domestic-injury exception did not create subject matter jurisdiction "where the plaintiff's claim rests solely on the independent foreign harm."

*Id.* at 159.

Plaintiffs are correct insofar as they point out that the fact pattern before this Court is distinguishable in a potentially important respect from that in *Empagran I*. In *Empagran I*, the plaintiff's claim was based *solely* on injury suffered in foreign markets that was independent of any adverse domestic effect of the anti-competitive conduct. Here, in contrast, though Plaintiffs allege foreign injury analogous to that at issue in *Empagran I (*see discussion below), they also allege that domestic injury resulted from purchases they made in domestic markets affected by the anti-competitive conduct. *Empagran I's* specific holding, which explicitly depended on the fact that "foreign harm alone gives rise to the plaintiff's claim" (*id.* at 166), did not directly resolve whether a plaintiff may use domestic injury directly resulting from anti-competitive conduct as a jurisdictional hook for also recovering damages from foreign injury that results from the same anti-competitive conduct, but not from the domestic effects of the anti-competitive conduct.[2]

Nonetheless, the Supreme Court's discussion of the FTAIA exception in *Empagran I* has significant ramifications for how this Court should analyze the circumstances before it. Though Plaintiffs are correct that Section 6a does not expressly speak in terms of foreign "injury", the Supreme Court's analysis of the FTAIA considered the domestic or foreign nature of the alleged injury to be key to its application of comity principles when divining Congressional intent. Noting the importance of prescriptive comity in construing "ambiguous statutes to avoid unreasonable interference with the sovereign authority of other nations", the Supreme Court observed:

> our courts have long held that application of our antitrust laws to foreign anticompetitive conduct is nonetheless reasonable, and hence consistent with principles of prescriptive comity, insofar as they reflect a legislative effort to redress *domestic* antitrust injury that foreign anticompetitive conduct has caused.

*Id.* at 165 (emphasis in original). Examining the foreign nature of the injuries alleged by the

---

[2] For the same reason, the three post-*Empagran* district court cases cited by Defendants do not squarely tackle the issue now before the Court. In each of those cases, the plaintiffs at issue did not participate in the U.S. market and could not draw a causal relationship between domestic anticompetitive effects and any of the injury they alleged. *See Latino-Quimica-Amtex S.A. v. Akzo Nobel Chemicals B.V.*, 2005 WL 2207017 at *1 (S.D.N.Y. Sept. 8, 2005); *In re Monosodium Glutamate*, 2005 WL 2810682 at *1 (D. Minn. Oct. 26, 2005); *In Re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 515629 at * 2 (N.D. Cal. Mar. 1, 2006).

6

plaintiffs before it, the Supreme Court then went on to find little justification under comity principles for redressing such injuries by application of United States antitrust laws, given the potential for interference with other nations' own antitrust enforcement policies. *Id.* at 166-69. The Supreme Court also determined that Congress had not intended the FTAIA to expand the Sherman Act's scope as applied to foreign commerce, and observed that at the time of the FTAIA's enactment, no case law supported extending the Sherman Act to foreign injury not caused by domestic effects. *Id.* at 169-173. Accordingly, the Supreme Court concluded that "Congress would not have intended the FTAIA's exception to bring independently caused foreign injury within the Sherman Act's reach." *Id.* at 173.

In this Court's view, the principles of comity identified in *Empagran I* are central to the question of statutory interpretation before this Court, and counsel this Court away from an interpretation of the FTAIA that would permit Plaintiffs to adjudicate its claims of foreign injury before this Court, to the extent such injury did not arise from the domestic effects of Defendants' alleged anti-competitive conduct. The higher prices in foreign markets of which Plaintiffs complain here are not the consequence of any domestic anti-competitive effect that Congress sought to ward against by enactment of the FTAIA. Moreover, by providing Plaintiffs with the ability under the FTAIA to recover damages for any injury that arises from the domestic effects of the anti-competitive conduct, Congress has adequately provided a remedy for the injury that Congress sought to redress. Interpreting the FTAIA to permit Plaintiffs to bring claims for independent foreign injury, merely because they also suffered domestic injury arising from the same conduct, would significantly encroach upon the traditional jurisdictional prerogatives, and run afoul of principles of prescriptive comity. Plaintiff's proposed interpretation of the FTAIA would also be inconsistent with how the Supreme Court viewed the legislative history of the FTAIA.

Plaintiffs contend that the legislative history of the FTAIA supports their contention that the Sherman Act can reach foreign injury when that injury is caused by anticompetitive conduct that also has domestic effects. After reviewing the legislative history, however, the Court finds no clear statement of Congressional intent supporting Plaintiffs' position. *See* H.R. Rep. 97-686, 1982 U.S.C.C.A.N. 2487. To the contrary, the legislative history indicates that the amendments were

7

1 designed "to require that the 'effect' providing the jurisdictional nexus must also be the basis for the
2 injury alleged under the antitrust laws." *Id.* at 2497.  Moreover, as the Supreme Court observed in
3 *Empagran I*, the legislative history also indicates that Congress did not intend the FTAIA to expand
4 the Sherman Act's scope as applied to foreign commerce, and thus id not intend "to bring
5 independently caused foreign injury within the Sherman Act's reach."   542 U.S. at 169-73 (citing
6 H.R. Rep. 97-686, 1982 U.S.C.C.A.N. 2487, 2487-88.)

7 Plaintiffs also urge the Court to regard the entirety of their allegations of injury against as a
8 single "claim" that cannot be split or analyzed for its separate domestic and foreign components.
9 The Court rejects this position as inconsistent with jurisdictional principles and an attempt to elevate
10 form over substance.  The FTAIA defines the scope of justiciable claims under the Sherman Act that
11 involve foreign commerce, and the Supreme Court's comity analysis in *Empagran I* makes clear that
12 the type of ***injury*** involved determines the justiciability of the alleged claims.  Post-*Empagran*,
13 courts vetting allegations of antitrust injury have not permitted the FTAIA to extend jurisdiction
14 over foreign injury independent of domestic effects merely because the same plaintiff is also able to
15 allege domestic injury caused by the same anticompetitive conduct.  For example, in *In re Intel*
16 *Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555 (D. Del. 2006), the Court rejected the
17 plaintiff's argument that "foreign conduct with a direct foreign effect should be combined with
18 domestic conduct in an attempt to confer jurisdiction over the foreign conduct under the rubric of a
19 single claim."  *Id.* at 562 (dismissing plaintiff's claims "to the extent those claims are based on
20 foreign conduct and foreign harm" but permitting claim for domestic antitrust injury to proceed).
21 *See also In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452, 457 (D. Del. 2007)
22 (dismissing Sherman Act claims "to the extent those claims are based on the alleged foreign
23 conduct"); *CSR Ltd. v. CIGNA Corp.*, 405 F. Supp. 2d 526, 549, 551-52 (D.N.J. 2005) (assessing
24 claims of parent and subsidiary separately, retaining domestic claims and dismissing only foreign
25 claims that did not arise from domestic effect).[3]  Plaintiffs' attempts to characterize the various

---

[3] The problematic nature of Plaintiffs' assertion that they are merely asserting a single "claim" is underscored by their acknowledgment that they are actually asserting an amalgamation of claims, not only those native to the named Plaintiffs, but those assigned to the named Plaintiffs by their foreign affiliates and subsidiaries. (Amended Complaint ¶¶ 14-19, Opposition at 4 n.4.)  Plaintiffs cannot convert a non-justiciable claim, originally accrued by a foreign affiliate or

8

claims for domestic and foreign injury as arising from a "single economic relationship" do not alter the nature of this analysis.[4]

This Court concludes that the domestic injury exception of the FTAIA requires that, for foreign injury to be justiciable under the Sherman Act, the foreign injury be proximately caused by the domestic effects of the anti-competitive conduct.

### 2. Plaintiffs' alleged foreign injury was not proximately caused by the domestic effects of Defendants' anti-competitive conduct.

The Court next turns to the question of whether the foreign injury alleged by Plaintiffs is proximately caused by the domestic effects of Defendants' anti-competitive conduct. Plaintiffs contend that a sufficient proximal causation relationship exists here because the same fixed prices and pricing relationship between Chemtura and Plaintiffs gave rise to both the domestic and foreign injury. Defendants, in turn, contend that Plaintiffs' allegations establish, at most, a but-for or indirect causal relationship that is considered insufficient under guiding case law.

The leading authority on the meaning of the "gives rise to" wording of the Section 6a(2) of the FTAIA is *Empagran v. F. Hoffman-LaRoche Ltd.*, 417 F.3d 1267 (D.C. Cir. 2005) ("*Empagran II.*").[5] In *Empagran II*, the D.C. Circuit took up the specific question of how strong a causal link must exist between the domestic effect of anti-competitive conduct and subsequent foreign injury to trigger the domestic-injury exception of the FTAIA. The *Empagran II* plaintiffs advanced an "arbitrage theory", contending that:

> [b]ecause the appellee's product (vitamins) was fungible and globally

---

subsidiary and asserting only independent foreign injury, into a justiciable claim merely by assigning it to another plaintiff that holds a justiciable claim.

[4] *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), cited to by Plaintiffs, is inapposite. *Copperweld* deals not with whether the Sherman Act reaches foreign injury that is independent of domestic anticompetitive effects, but with the definition of conspiracy under Section 1 of the Sherman Act. As *Copperweld* indicates, a parent and subsidiary are generally not able to form a Section 1 conspiracy because they are not typically "two independent sources of economic power previously pursuing separate interests." *Id.* at 771.

[5] The Court declines Plaintiff's invitation to adopt different interpretations of the causation portion of the FTAIA test reached by some lower courts before the decisions in *Empagran II*. For example, the Court finds that *Crompton Corp. v. Clariant Corp.*, 220 F. Supp. 2d 569 (M.D. La. 2002) and *In re Vitamins Antitrust Litigation*, 2001 WL 755852 (D.D.C. June 7, 2001), cited by Plaintiffs at oral argument, are not inconsistent with the principles and reasoning articulated in *Empagran I* and *Empagran II.*

9

> marketed, they were able to sustain super-competitive prices abroad only by maintaining super-competitive prices in the United States as well. Otherwise, overseas purchasers would have purchased bulk vitamins at lower prices either directly from U.S. sellers or from arbitrageurs selling vitamins imported from the United States, thereby preventing the appellees from selling abroad at the inflated prices.

*Id.* at 1270. The plaintiffs argued that the conspirators accomplished their objective by "fixing a single global price for the vitamins." *Id.* at 1270 n.5.

The D.C. Circuit, however, found such allegations insufficient, holding that the "statutory language – 'gives rise to' – indicates a direct causal relationship, that is, proximate causation, and is not satisfied by the mere but-for 'nexus' [plaintiffs] advanced in their brief." *Id.* at 1271. The D.C. Circuit found that:

> While maintaining super-competitive prices in the United States may have facilitated [defendants'] scheme to charge comparable prices abroad, this fact demonstrates at most but-for causation. It does not establish . . . that the U.S. effects of the defendants' conduct – i.e., increased prices in the United States – proximately caused the foreign [plaintiffs'] injuries. . . The but-for causation the [plaintiffs] proffer establishes only an indirect connection between the U.S. prices and the prices they paid when they purchased vitamins abroad.

*Id.* at 1271. The D.C. circuit noted that, instead, "it was the foreign effects of price-fixing outside of the United States that directly caused, or 'gave rise to', their losses outside of the United States when they purchased vitamins abroad at super-competitive prices." *Id.*[6]

Like the plaintiffs' allegations in *Empagran II*, Plaintiffs' allegations here are insufficient to establish the requisite direct causal relationship between the domestic effect of Defendants' alleged anticompetitive behavior and the foreign injury. In short, Plaintiffs allege that the prices paid for rubber chemicals in the global market were "inextricably linked" and correlated with the prices paid in the United States, and that Defendants conspired to bring about a "single worldwide price increase" (Amended Complaint ¶¶ 48, 62, 66.) Plaintiffs also expressly allege an arbitrage theory, contending that Defendants fixed prices in the United States not merely to capture cartel profits in

---

[6] Subsequent district court decisions around the country have applied the D.C. Circuit's proximate causation test when analyzing the domestic-injury exception of the FTAIA. *See Latino-Quimica-Amtex S.A. v. Akzo Nobel Chemicals B.V.*, 2005 WL 2207017 at *7 (S.D.N.Y. Sept. 8, 2005); *In re Monosodium Glutamate*, 2005 WL 2810682 at *3 (D. Minn. Oct. 26, 2005); *In Re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 515629 at * 4-5 (N.D. Cal. Mar. 1, 2006).

10

the United States, but also to allow the cartel to be effective anywhere in the world. (Amended Complaint ¶¶ 62, 64-65.) But without more, these allegations constitute no more than the indirect, but-for causation that *Empagran II* and its progeny have rejected. *See Latino-Quimica-Amtex S.A.*, 2005 WL 2207917 at *11 (rejecting allegations that arbitrage from the United States would have defeated attempt to fix prices in other countries as an insufficient but-for causal allegation"); *In Re Monosodium Glutamate*, 2005 WL 2810682 at *3 (rejecting theory that defendants could only sustain super-competitive prices abroad by maintaining them in the United States as insufficient indirect causation); *In Re: DRAM Antitrust Litig.*, 2006 WL 515629 at *4-5 (rejecting arbitrage and global price-fixing theories as inadequate but-for causal allegations). Plaintiffs' arguments that "the domestic and foreign impacts were the product of a single economic relationship" (Opposition at 19:5-6) and that "the price paid for deliveries abroad was actually linked to the collusively-established price set and paid in the United States" (Opposition at 19:11-13) gloss over the FTAIA's requirement that it must be the ***domestic effects*** of the Defendants' anticompetitive conduct, rather than the ***anticompetitive conduct*** itself, which gives rise to Plaintiffs' foreign injuries.[7]

### 3. Leave to amend is not appropriate here.

Having concluded that the Court lacks subject matter jurisdiction over Plaintiffs' allegations of foreign injury as currently pleaded, the Court must now consider whether Plaintiffs should be provided with an opportunity to further amend their complaint to attempt to allege facts that would establish the requisite direct causal connection between the domestic effects of Defendants' anti-competitive conduct and the foreign injury. Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." However, leave to amend will be denied where the amendment would be futile, or where the amended complaint would be subject to dismissal. *Saul v. U.S.*, 928 F.2d 829, 843 (9th Cir. 1991).

It is apparent to this Court that if granted leave to amend here, Plaintiff would be able to

---

[7] In the alternative, Defendants also contend that Plaintiffs lack standing under the Sherman Act to pursue their claims of foreign injury. This analysis implicates many of the same jurisdictional issues under the FTAIA, and the same considerations that mandate a finding of no subject matter jurisdiction weigh against a finding of antitrust standing. However, in view of the Court's dismissal of the Sherman Act claim for lack of subject matter jurisdiction, there is no need for consideration of Defendants' alternative contention that Plaintiffs lack standing.

11

1 plead more specific allegations that the alleged cartel originally targeted tire companies with
2 significant operations in the United States, but came to realize that for their efforts to succeed, they
3 would have to maintain inflated prices for these companies for all of their worldwide operations.
4 Sasse Decl., Exhs. A, B & E.[8]  Plaintiffs would also be able to plead more specific allegations that
5 Defendants therefore treated each Plaintiff as a global customer, setting a collusively-established
6 price as the product of a single pricing relationship.  Sasse Decl. Exhs. C & D.  Such additional
7 allegations, though, do not substantively change Plaintiffs' theory of recovery regarding foreign
8 injury – namely, that Plaintiffs' foreign injury was caused by a global price-fixing conspiracy with
9 the purpose and effect of raising U.S. prices.  Without a different theory of recovery altogether,
10 Plaintiffs cannot plead their way out of a finding that no subject matter jurisdiction exist for their
11 foreign injury claims.

12 Accordingly, because this Court finds that amendment would be futile, the Court denies
13 Plaintiffs leave to amend.  *Accord Latino Quimica-Amtex*, 2005 WL 2207017 at *12-13 (denying
14 leave to amend as futile); *In Re: DRAM Antitrust Litig.*, 2006 WL 515629 at *6 (same).

15 **B.  Statutes Of Limitations Issues.**

16 In their Motions, Defendants assert that various statute of limitations defenses require
17 dismissal of part or all of Plaintiffs' claims.

18 Plaintiffs seek damages for alleged injuries beginning in 1993 and continuing into 2003.
19 (Amended Complaint ¶¶ 1-2.)  Plaintiffs first brought claims in this action for domestic injuries
20 against Chemtura on June 29, 2006.   Plaintiffs first brought claims against the individual
21 defendants, and against Chemtura for foreign injuries, on September 22, 2006.   Claims brought
22 under the Sherman Act are subject to a four-year statute of limitations.  15 U.S.C. § 15b.
23 Accordingly, if no tolling doctrine applies, Plaintiffs' claims for domestic injuries against Chemtura
24 are limited to injuries suffered as a result of overt acts that took place on or after June 29, 2002.
25 Likewise, if no tolling doctrine applies, Plaintiffs' claims against the individual defendants, as well

---

[8] Because Defendants bring only a facial Rule 12(b)(1) challenge, the Court did not consider the content of the Sasse Declaration or other evidence not pleaded in the complaint when determining whether to dismiss Plaintiffs' claims as currently pleaded. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  However, the Court now considers the content of such evidence for purposes of determining whether leave to amend should be granted.

**United States District Court**
For the Northern District of California

1 as their claims against Chemtura for foreign injuries, are limited to injuries suffered as a result of
2 overt acts that took place on or after September 22, 2002.

3 In an attempt to avoid application of the four-year statute of limitations that would otherwise
4 apply to their antitrust claims, Plaintiffs include allegations of fraudulent concealment in their
5 Amended Complaint. Specifically, Plaintiffs contend that they could have not have discovered the
6 existence of the conspiracy through the exercise of due diligence until October 2002, when
7 Chemtura first made partial public disclosures that the Department of Justice was investigating the
8 rubber chemicals industry. (Amended Complaint ¶ 76.) Defendants contend that Plaintiffs have
9 failed to plead due diligence with sufficient particularity to establish tolling under the fraudulent
10 concealment doctrine. The Court disagrees, and finds that Plaintiffs have pleaded fraudulent
11 concealment with sufficient particularity to survive a motion to dismiss.

12 To successfully plead fraudulent concealment, Plaintiffs must "plead facts showing that
13 [Defendants actively misled [them], that [they] had neither actual nor constructive knowledge of the
14 facts constituting [their] claim for relief despite [their] diligence in trying to discover the pertinent
15 facts." *Rutledge v. Boston Woven Hose & Rubber Co.*, 576 F.2d 248 250 (9th Cir. 1978). "The
16 requirement of diligence is only meaningful, however, when facts exist that would excite the inquiry
17 of a reasonable person." *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 504 (9th Cir.
18 1988).

19 Taking the facts alleged in the Amended Complaint as true, Defendants engaged in a self-
20 concealing conspiracy that did not give rise to any facts that would put Plaintiffs on inquiry notice
21 that there was a cartel or that the prices being charged for rubber chemicals were the product of a
22 conspiracy. Plaintiffs have alleged, with specificity, numerous affirmative acts of concealment in
23 furtherance of the conspiracy, both by Chemtura and by the individual Defendants, including secret
24 meetings to set prices, agreement not to publicly discuss the nature of the scheme, destruction of
25 documents that might evidence their actions, and pretextual justifications for the inflated prices of
26 rubber chemicals. (Amended Complaint ¶¶ 66, 76-81.) Such facts, if true, would not give rise to
27 any information that would "excite the inquiry of a reasonable person" and thereby require Plaintiffs
28 to engage in affirmative steps to attempt to discover the conspiracy. Under these circumstances,

13

Plaintiffs' allegation that they could not have discovered the alleged conspiracy "at an earlier date by the exercise of reasonable due diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their Co-Conspirators" to conceal the conspiracy (Amended Complaint ¶ 77) is a sufficient allegation of due diligence. "Plaintiffs are not under a duty continually to scout around to uncover claims which they have no reason to suspect they might have." *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 782 F. Supp. 487, 489 (C.D. Cal. 1991). "It is impossible to declare at this [motion to dismiss] stage that plaintiffs failed to exercise due diligence to follow up on that which may or may not have been sufficient to excite their suspicions." *Id.*[9]

Several of the individual Defendants contend that even if Plaintiffs have adequately alleged fraudulent concealment against Chemtura, Plaintiffs have failed to specify with particularly any affirmative acts of concealment taken by the individual Defendants. The Court rejects this argument. Plaintiffs' Amended Complaint adequately alleges that the individual Defendants played a role in the affirmative acts of concealment, including the offering of false and pretextual reasons for the price-fixing meetings that these individual Defendants allegedly attended. (Amended Complaint ¶¶ 61, 66, 77-81.) For the same reason, the Court rejects the argument raised by Defendant Welch in his reply brief that Plaintiffs' allegations of fraudulent concealment fail as to him because Plaintiffs have not adequately pleaded reliance on misrepresentations relating to the meetings that Welch attended. Though Plaintiffs did not use the talismanic words "reasonable reliance" in their Amended Complaint, Plaintiffs have adequately pleaded that they were misled by (i.e., relied upon) Defendants' affirmative acts of concealment (Amended Complaint ¶¶ 76-81) and that it was reasonable to do so insofar as they allege they "could not have discovered the existence of the combination and conspiracy alleged herein at an earlier date by the exercise of reasonable due diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their Co-conspirators" (*id.* at ¶ 77.)

---

[9] Moreover, Defendants' contention that the active concealment ceased before October 2002 raises factual issues outside the scope of the Amended Complaint. As with the factual dispute regarding due diligence, the Court finds these issues inappropriate for resolution at the pleadings stage; they are better addressed in the Rule 56 context.

Accordingly, this Court will not dismiss Plaintiffs' claims at this stage for failure to plead specific acts of inquiry, when it cannot yet be determined whether such inquiry was required. As many courts have noted in the antitrust conspiracy context, it is generally inappropriate to resolve the fact-intensive allegations of fraudulent concealment at the motion to dismiss stage, particularly where the proof relating to the extent of the fraudulent concealment is alleged to be largely in the hands of the alleged conspirators. (Amended Complaint ¶¶ 79-80.) "[I]n antitrust cases, where the proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *In re Infant Formula Antitrust Litig.*, 1992 WL 503465 at *2; *see also In re Vitamins Antitrust Litig.*, 2000 WL 1475705 at *8 (D.D.C. May 9, 2000) ("issues of fraudulent concealment and due diligence are questions of fact that should not be decided on a motion to dismiss"); *In re Issuer Initial Public Offering Antitrust Litig.*, 2004 WL 487222 at *5 (S.D.N.Y. March 12, 2004) ("Because questions of fact exist as to whether Plaintiffs should have discovered the facts alleged in their complaint prior to the expiration of the statute of limitations period, such determination is inappropriate on a motion to dismiss.") Given that Plaintiffs have made legally sufficient allegations of a conspiracy and have pled affirmative acts of concealment with particularity, Plaintiffs allegation that they had no knowledge of facts that would have led to discovery of the conspiracy by the exercise of reasonable due diligence is sufficient to establish, at the pleading stage, that there were no facts that would excite the inquiry of a reasonable person to trigger a duty to inquire. *See In re Nine West Antitrust Litig.*, 80 F. Supp. 2d 181, 193 (S.D.N.Y. 2000). Plaintiffs' allegations of fraudulent concealment are therefore sufficient to survive a motion to dismiss.

On the facts alleged by Plaintiffs, application of the fraudulent concealment doctrine tolls the running of the statute of limitations with respect to the injuries asserted by Plaintiffs until October 2002, the date that Chemtura first made public disclosures about the Department of Justice antitrust investigation of the rubber chemicals industry. Because Plaintiffs brought their claims asserted in the Amended Complaint before four years had passed once the statute of limitations begun running,

15

Plaintiffs' claims against each of the Defendants are timely for purposes of the pending motions.[10]

C. **Additional Arguments Raised By Individual Defendants.**

Finally, the Court addresses several additional grounds for dismissal raised by the individual Defendants that are not addressed above.

### 1. Eisenberg's contention that he withdrew from the conspiracy upon resigning from Chemtura on December 31, 2001.

Defendant Eisenberg contends that the statute of limitations has expired as against him because he resigned from Chemtura on December 31, 2001 and thereby withdrew from the conspiracy on that date. Given the Court's findings above regarding the adequacy of Plaintiffs' allegations of fraudulent concealment as to all Defendants, however, Eisenberg's contention is insufficient to support dismissal. Even if Eisenberg could establish at the motion to dismiss stage that he withdrew from the conspiracy at the end of 2001 – a question that the Court does not reach – Plaintiffs' allegations of fraudulent concealment would prevent the statute of limitations as to Eisenberg's conduct from beginning to run until October 2002. See *Morton's Market, Inc. v. Gustafson's Dairy, Inc.*, 211 F.3d 1224, 1224 (11th Cir. 2000) (in action filed more than four years after withdrawal, defendant "would be liable for any price-fixing activity prior to its withdrawal" if statute of limitations equitably tolled by fraudulent concealment).

### 2. Welch's contention that Plaintiffs' claims are undercut by documentary evidence incorporated into the Amended complaint.

Defendant Welch contends that Plaintiffs' claims against him must be dismissed both because they are too conclusory to state a cognizable claim, and because they are undercut by documentary evidence incorporated into the Amended Complaint. Neither argument persuades the Court.

First, Plaintiffs' allegations against Welch are specific and substantial enough to state a cognizable claim. Plaintiffs allege far more than that Welch merely met with competitors – they

---

[10] The Court therefore need not reach Defendants' assertions that the class action tolling doctrine does not apply to Plaintiffs' claims, nor the individual Defendants' assertions that Plaintiffs should not be permitted to rely on the tolling provisions of Section 5(I) of the Clayton Act, 15 U.S.C. § 16(I). Given the Court's finding that Plaintiffs have adequately pleaded fraudulent concealment up and until October 2002, Plaintiffs do not need to separately obtain the benefit of the class action tolling doctrine to render timely their claims for injury as far back as 1993.

16

specifically allege his involvement in agreeing to implement price increases. (Amended Complaint ¶¶ 66(a), 66(h), 66(j) & 66(l).) More, the complaint adequately alleges Welch's general participation in the allege conspiracy to fix rubber chemical prices. (Amended Complaint ¶¶ 25, 59-63.) *Accord Beltz Travel Service, Inc. v. Int'l Air Transport Ass'n*, 620 F.2d 1360, 1366-67 (9th Cir. 1980) ("Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result.").

Second, the 1996 email referenced in paragraph 66(e) of the Amended Complaint does not, as Welch contends, contradict Plaintiffs' other allegations so much that Plaintiffs would be unable to establish liability if they proved the facts alleged. The mere fact that Welch was allegedly replaced as Chemtura's principal contact for price-fixing with Flexsys does not nullify Plaintiffs' allegations that Welch engaged in price-fixing behavior before being replaced (Amended Complaint ¶ 66(a) & 66(e)), nor that he nonetheless continued to participate in price-fixing discussions and agreements even after being replaced as Chemtura's principal contact with Flexsys (Amended Complaint ¶ 66(h), 66(j) & 66(l)).

**CONCLUSION**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** each of the Motions. The Court **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiffs' Sherman Act claims against all Defendants to the extent they seek to recover damages for foreign injury, *i,e.*, the purchase of rubber chemicals at allegedly inflated prices in foreign markets for use outside of the United States. Plaintiffs may proceed with their Sherman Act claims to the extent they seek to recover damages for domestic injury, *i.e.*, the purchase of rubber chemicals at allegedly inflated prices in the domestic market or for use within the United States. In all other respects, the Court denies the Motions to Dismiss.

**IT IS SO ORDERED.**

Dated:   8/13/2007

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE